PESQUERA, DEMANDANTE Y APELANTE, *v.* FERNÁNDEZ ET AL.,
DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Sección 1ª., en un pleito sobre reivindicación y daños y
perjuicios.

No. 1160.—Resuelto en febrero 10, 1915.

EXPEDIENTE DE CONVERSIÓN DE POSESIÓN EN DOMINIO—OBJECIONES A SU ADMISIÓN COMO PRUEBA—ORDEN JUDICIAL DE ABRIL 4, 1899.—Habiendo sido reducido a seis años por la Orden Judicial de abril 4, 1899, el término de veinte que exigía el artículo 393 de la Ley Hipotecaria para la conversión de las inscripciones posesorias en inscripciones de dominio, y habiendo sido inscrito el expediente posesorio en este caso en 1894 y su conversión en dominio en 1911, el plazo de seis años transcurrió con exceso no ya contado desde 1894 sino computado desde el 4 de abril de 1899, y en tal virtud debe concluirse que la conversión en dominio se llevó a efecto y se inscribió de acuerdo con la ley y fué correctamente admitida como prueba.

COSA JUZGADA—RESOLUCIONES DICTADAS EN EXPEDIENTES DE CONVERSIÓN DE POSESIÓN EN DOMINIO—DERECHOS DE LOS OPONENTES EN EL EXPEDIENTE.—No constituye cosa juzgada con respecto a los derechos de los oponentes en un expediente de conversión de posesión en dominio, la resolución de la corte desestimando la oposición.

REIVINDICACIÓN—PRUEBA.—Es indispensable en la reivindicación que el deman-
      dante justifique no sólo el derecho con que pide la cosa detentada, sino la
      identidad de la cosa misma.
PRUEBA — CONFLICTO DE PRUEBAS — PASIÓN, PREJUICIO O PARCIALIDAD — ERROR
      MANIFIESTO.—En el presente caso la prueba sobre quién era el dueño de las
      porciones de terrenos a que se refiere la demanda, resultó contradictoria, y
      en ausencia de una demostración cumplida de que la corte sentenciadora actuó
      movida por pasión, prejuicio o parcialidad, o cometió algún error manifiesto,
      su decisión resolutoria del conflicto debe prevalecer.
DOMINIO—PRESCRIPCIÓN EXTRAORDINARIA—JUSTO TÍTULO Y BUENA FE.—El domi-
      nio se pierde o se adquiere por la prescripción y para adquirir por la pres-
      cripción extraordinaria de treinta años no son necesarios ni el justo título
      ni la buena fe.
DAÑOS Y PERJUICIOS—PRUEBA ESPECÍFICA.—Debe desestimarse una solicitud de
      daños y perjuicios hecha por una parte en un caso de esta naturaleza, cuando
      no se ha presentado prueba específica alguna de los que se hayan podido
      causar.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José L. Pesquera.*

Abogado de los apelados: *Sr. Henry G. Molina de St. Remy.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un pleito sobre reivindicación y daños y perjuicios. El demandante José de Jesús Pesquera alegando ser dueño de trece solares comprendidos dentro de los límites de una finca de cuatro cuerdas de extensión denominada "Maturí" situada a orillas del pueblo de Bayamón, solicitó de la corte que ordenara a los demandados, ocupantes ilegales de dichos solares, que los desalojaran, pagando además al demandante la suma de tres mil dólares en concepto de daños y perjuicios. Los demandados alegaron que en efecto ocupaban dichos solares, pero no ilegalmente sino en concepto de dueños desde hacía más de treinta años. Los demandados en una contrademanda que presentaron reconocieron la existencia de un expediente iniciado en 1894 para acreditar la posesión de la finca "Maturí" y la de otro instado en 1911 para convertir la posesión en dominio, pero sostuvieron que cuando se tramitaron dichos expedientes ellos estaban en posesión de los terrenos que hoy ocupan

como dueños de los mismos y no fueron citados en forma alguna, alegando sustancialmente títulos por prescripción.

Tal es, reducido a sus límites esenciales, el debate planteado en este caso.

Resueltas algunas cuestiones previas suscitadas por el demandante, se celebró la vista en la que ambas partes presentaron y practicaron pruebas, y el caso quedó sometido definitivamente a la corte para sentencia. Esta se dictó el 12 de enero de 1914 y se enmendó el 17 de marzo del mismo año y por ella se decidió finalmente que los demandados son dueños en pleno dominio, con derecho a la posesión que hoy disfrutan, de los respectivos solares y casas descritos en el párrafo quinto de la demanda; que el título posesorio de la finca "Maturí" comprendiendo los terrenos de los demandados, es nulo y sin ningún valor, siendo también nula y sin valor alguno la conversión de dicha posesión en dominio; que deben cancelarse las inscripciones en el registro de la propiedad a favor del demandante Pesquera de la parte de la finca "Maturí" que pertenece a los demandados, con excepción de Inés Marín, y que el demandante debe pagar las costas y desembolsos.

Contra dicha sentencia interpuso el demandante el presente recurso de apelación, habiendo archivado en tiempo y forma su alegato escrito y comparecido a la vista del recurso celebrada el 11 de noviembre de 1914. Los demandados se limitaron a comparecer a la vista de la apelación.

En su alegato el demandante y apelante sostiene que el tribunal sentenciador erró: 1°., al desestimar las excepciones previas a la contestación; 2°., al declarar sin lugar las excepciones previas a la contrademanda; 3°., al apreciar las pruebas; 4°., al dejar de resolver dos cuestiones esenciales planteadas por el demandante al contestar la contrademanda, a saber: indebida acumulación de contrademandantes y cosa juzgada; 5°., al no determinar en su sentencia los derechos de cada demandado separadamente; 6°., al declarar que los demandados son dueños de los solares descritos

en el párrafo 5°. de la demanda; 7°., al enmendar la senten-
cia, después de apelada; y 8°., al no hacer en la sentencia
enmendada. declaración alguna con respecto a los derechos
del demandado Inés Marín.

En vez de considerar separadamente los errores alegados,
comenzaremos por exponer las pruebas, estudiaremos luego
si se cometió o nó algún error al admitirlas y si la excep-
ción de cosa juzgada se resolvió o nó debidamente, y vere-
mos, por último, si en el caso de que la demanda deba ser
declarada sin lugar en todo o en parte, es posible acceder
a lo solicitado por los demandados en su contrademanda .

La prueba del demandante Pesquera consistió en:

1. Escritura de compraventa de la finca "Maturí" otor-
gada el 13 de julio de 1894 por el Obispado de Puerto Rico,
por medio de su representante legal, a favor de José Jesús
Pesquera, el demandante. Admitida sin oposición.

2. Certificación expedida por el Registrador de San Juan,
creditiva de que la venta de la finca "Maturí" se inscribió
a favor de Pesquera en el registro. Admitida sin oposición.

3. Diligencias originales de cierto requerimiento promo-
vido por el demandante Pesquera ante el Juzgado Munici-
pal de Bayamón, en 26 de julio de 1894, de cuyas diligencias
resulta que Pesquera manifestó al juzgado que había com-
prado la finca "Maturí" y que existiendo en ella varias casas
de propiedad de distintos inquilinos, suplicaba al juzgado
que requiriera a dichos inquilinos a fin de que satisficieran
a Pesquera, dueño del terreno, la suma mensual de un peso
por alquiler del piso ocupado por cada casa, a partir del 1
de agosto de 1894, resultando además que se requirió perso-
nalmente a cada uno de los cincuenta inquilinos que existían,
hallándose entre ellos los demandados Salomé Fernández,
Miguel González, y Maximino Torres. Admitidas sin opo-
sición.

4. Copia certificada de los autos del expediente sobre con-
versión de posesión en dominio instado por Pesquera. El
expediente se inició en la Corte Municipal de Bayamón y

habiéndose opuesto Enrique Salgado y otros, pasó a la corte de distrito y ésta desestimó la oposición por no haberse establecido en la forma marcada por la Ley Hipotecaria. La conversión se decretó y se inscribió en el registro de la propiedad. La copia se admitió con la oposición de los demandados, basada en que "esa conversión es nula y sin valor alguno por no haber transcurrido los 20 años que requería la Ley Hipotecaria vigente entonces."

5. Documento extrajudicial del Obispo de Puerto Rico relativo al descuento de ciertos réditos del censo que gravaba la finca "Maturí," en atención a los gastos hechos por Pesquera en pleitos contra los inquilinos que ocupaban el terreno. Admitido finalmente sin oposición, y

6. Declaración del demandante, quien narró los hechos relativos a la adquisición de la finca "Maturí" y a la tramitación de los expedientes de posesión y de conversión en dominio de conformidad con lo que resulta de la prueba documental, y dijo además que cuando compró la finca estaba ocupada por unas cincuenta personas entre ellas por los demandados Salomé Fernández, Miguel González y Maximino Torres, y

"* * *   que la Mitra había encargado al párroco o párrocos de Bayamón la custodia de los terrenos denominados 'Maturí' y que estos párrocos autorizaban a algunas personas para que vivieran allí en concepto de inquilinos; que desde el año 1904, en que tuvo que demandar ante la Corte Federal a un tal José Quirós que pretendió hacer un expediente de dominio de un solar, empezaron algunos inquilinos a negarse a pagar, pero no de manera determinada, sino contestando al cobrador: 'luego, no tenemos ahora;' que le consta que los inquilinos de 'Maturí' fabricaban allí sus bohíos con permiso del Obispado y mediante la promesa que ellos hacían de marcharse cuando se les dijera; que mientras la Mitra poseyó estos terrenos no hubo pretensión por parte de ninguno de ellos de que los solares les pertenecían * * *; que nació en Bayamón, vivió siempre allí y estuvo colocado en el ayuntamiento de aquel pueblo antes de colocarse en San Juan; que, siendo así, empleado del municipio en el año 1875, tuvo oportunidad de saber en qué concepto vivían en 'Maturí' los requeridos, pues además de que tenía amis-

tad con los párrocos, veía cuando los individuos llevaban papelitos del párroco para el alcalde, papelitos que más o menos decían: "Se concede permiso a Fulano de Tal para construir un bohío (o una casa) y yo suplico a Ud. que le dé permiso;' que entonces el alcalde le otorgaba otro permiso y le cobraba 50 centavos como arbitrio municipal por la construcción."

La prueba de los demandados y contrademandantes consistió en las declaraciones de doce de ellos. Dichas declaraciones, copiadas a la letra de la exposición del caso, dicen así:

"DECLARACIÓN DEL DEMANDADO SALOMÉ FERNÁNDEZ.

"Preguntado por su abogado, dice: que vive en 'Maturí,' en un solar de 6 metros de frente por 8 de fondo; que allí se crió, allí estaba su abuelita, la cual murió y después quedó él con su mamá, la cual también murió, quedándose el declarante allí; que pasa de treinta años que murió su madre; que su tía pagaba contribución en el Gobierno español y después que murió su tía se quedó él; que su mamá y su tía vivieron allí como dueños y él también, sin que tuvieran permiso de nadie para vivir allí; que hace 5 años el Sr. Pesquera lo demandó reclamándole pago del piso y él le dijo que no lo reconocía como dueño de aquello; que en la dominación española vivía tranquilo; que conoce al Sr. Pesquera; que no lo ve por allí; que hay veces que pasa por allí para ir para donde había un pesebre y ahora pasa para ir para su finca; que en tiempo de España nunca vió al Sr. Pesquera por allí.

"Repreguntado por el abogado del demandante, dice: que no sabe los años que tiene; que no recuerda en qué año murió su mamá; afirma que hace más de 30 años sin que pueda explicar cómo lo sabe; que su mamá tenía ese solar como dueña y lo adquirió de la abuelita del declarante; que la abuela le compró a un Sr. Catalino Matos; que el Sr. Don Chucho le compró; que pasa de 40 años que tiene la casa que ahora vive; que el Sr. Pesquera le metió la sanidad allí y le hizo tumbar la casa y él formó otra casa en el mismo sitio; que Pesquera hizo eso para apoderarse del sitio; que ahora vive en una casa alquilada, en otro barrio que se llama 'Vista Alegre;' que tiene en 'Maturí' una casa que está fabricando ahora; que el Sr. Pesquera hace 5 años que lo está persiguiendo en los tribunales; que sabe que hace 5 años, sin que recuerde la fecha en que empezó a perseguirlo; que hoy no paga contribución porque la casa se le ha caido; que no pagó contribuciones el año pasado, ni el año antes, ni en 1910,

ni en 1911; que en 1909 fué donde Don Fernando Montilla y le dijo que quería darse de alta para pagar contribuciones del solar y Montilla le dijo que hiciera su casa y entonces tendría derecho de pagar contribuciones; que en 1908 tampoco pagó contribuciones ni en 1907, pues ya ha dicho que desde que se le cayó la casa no paga.

"El Sr. Juez le pregunta si fué la Sanidad la que le mandó destruir la casa y el declarante contesta que sí, cuando la peste.

"Sigue preguntándole el Sr. Juez, y contesta: que antes de la peste no pagaba contribuciones porque ya la casa estaba destruida; que la casa la destruyeron cuando la peste'; que antes de la peste estuvo pagando contribuciones hasta la tormenta de San Ciriaco.

"Continúa el declarante siendo repreguntado por el abogado del demandante, y contesta: que desde San Ciriaco no paga contribuciones; que pagó para la casa y para todo; que no recuerda cuándo fué el último año que pagó contribuciones; que tampoco recuerda cuándo murió su mamá, ni cuándo murió su abuela, ni recuerda su propia edad.

"Vuelto a preguntar por su abogado, dice el declarante: que su madre murió antes de San Ciriaco, como un año o dos antes; que tiene un hijo que debe tener de 30 a 35 años el cual nació en 'Maturí;' que el declarante no se ha mudado nunca de ese sitio hasta ahora que la Sanidad lo hizo mudar de allí para recomponer la casa; que su madre murió algunos años, digo, bastantes años después' de haber muerto su abuela.

"DECLARACIÓN DE LA DEMANDADA GABINA FIGUEROA.

"A preguntas de su abogado, declara: que vive en 'Maturí,' en una casa marcada antes con el número 42 y hoy con el 17, enclavada en un solar de 8 metros de frente por 40 de fondo, habiendo vivido allí desde que nació; que murió su padre y quedó su madre y después de muerta su madre quedó ella; que su madre tiene tres meses de muerta, hallándose la declarante muy pequeña cuando su abuela murió; que tiene 41 años, nació en ese sitio y vive aun ahí en concepto de dueña; que su madre vivía también como dueña y adquirió de su esposo que se llamaba Pedro Figueroa y también vivía como dueño; que no sabe de quien adquirió Pedro Figueroa; que su mamá murió de 60 años y vivió allí sin que nadie le diera permiso; que no paga contribuciones porque un tasador de rentas internas tasó la casita y dijo que no debía pagar contribuciones; que es ahora, y no en tiempo de España, que el Sr. Pesquera pasa por allí.

"Repreguntada por el abogado del demandante, dice: que no sabe el año en que nació ni sabe leer y si sabe que tiene 41 años es

por la fe de bautismo; que la casa en que vive en 'Maturí' tiene el número 60; y repite más o menos lo que dijo al ser preguntada por su abogado.

## "DECLARACIÓN DEL DEMANDADO MAXIMINO TORRES.

"A preguntas de su abogado, dice: que vive en 'Maturí,' en un solar de 24 pies de frente por 42 de fondo, donde enclava una casa que antes llevaba el número 13 y hoy lleva el 135; que tiene 58 años y desde que nació es dueño de sitio y de casa; que sus padres murieron siendo él niño y quedó su hermana administrando y en el año 72 murió su hermana y quedó el declarante representando; que en el año 1894 no tuvo notificación de expediente posesorio promovido por la iglesia ni se le exigió que pagara alquileres hasta hará pocos años que se presentó Don José Jesús Pesquera y el declarante le dijo que ignoraba que él fuera el dueño de eso, pues desde su niñez vivía en ese sitio y no había reconocido dueño.

"A repreguntas del abogado del demandante, dijo: que tendría 7 u 8 años cuando murieron sus padres; que eran 3 hermanos, uno de los cuales murió hace poco tiempo, pero vivían separados y él quedaba con una hermana en su casa y esta hermana murió en el 72; que el declarante nació en el 56, en cuya fecha todos los individuos que ocupaban la finca eran dueños, existiendo allí 10 o 12 casitas únicamente, entre ellas la de sus padres; que conoce la finca 'Maturí,' ignorando quién sea su dueño ahora ni antes; que no fué requerido por el secretario del juzgado municipal ni por nadie; que paga contribuciones al Tesoro de 3 años a esta parte, sin saber lo que le cobra el Tesoro y sí únicamente que le han ido a medir allí y le pasan un recibo; que no sabe si paga por la casa o la finca; que le han medido el terreno con casa y con todo.

## "DECLARACIÓN DEL DEMANDADO JOSÉ SÁNCHEZ CRUZ.

"Dice, preguntado por su abogado: que vive en un solar de 'Maturí' de 28 pies de frente por 42 de fondo, que antes llevaba el número 10 y hoy el 11; que no sabe por qué está demandado en este pleito; que pretende ser dueño del solar que ocupa porque su madre se lo dejó; que su madre murió el 19 de junio del año pasado y adquirió de su madre de ella que murió de 95 años en ese mismo sitio; que el declarante tiene 41 años y él y su madre nacieron allí; que su madre y su abuela se creían dueñas de ese solar, sin que nadie les haya molestado en la posesión; que en los últimos años el Sr. Pesquera le ha molestado en la posesión, pero el declarante nunca

le ha dicho que no, sino que vayan a los tribunales y los tribunales lo declararán; que antes que el Sr. Pesquera pretendiera ser dueño de eso nadie le había exigido nada, y no recuerda si su madre tuvo alguna noticia de un expediente posesorio en el año 1894; que nadie ha pretendido ser dueño de esa finca hasta ahora el Sr. Pesquera, el cual no iba antes por allí porque aquello era un fangal.

"Repreguntado por el abogado del demandante, dice: que es panadero; que heredó la casa de su mamá y ésta de su abuela (del declarante); que no sabe cuando murió su abuela; que no ha hablado de su papá ni de su abuelo ni sabe nada de ellos; rehusa contestar cuando murió su abuela, fundándose en que no sabe leer; que no sabe cuando murió su abuela; que no sabe nada de 'Maturí,' excepto de ese pedacito; que paga contribuciones Juana de la Cruz, pues el demandante todavía no ha hecho el traspaso a su favor; muestra recibos de contribución por la casa únicamente; que entiende que el solar es de ellos; que no sabe nada de si su abuela compró ese solar; que no sabe con qué derecho fabricó ella la casa allí; que no sabe si era dueña o cómo tenía derecho allí.

"Vuelto a preguntar por su abogado, dice: que su abuela adquirió por medio de sus antecesores; que fabricó la casa en concepto de dueña.

"DECLARACIÓN DEL DEMANDADO MARCELINO PARDO.

"A preguntas de su abogado, dice: que ocupa un solar de 24 pies de frente por 42 de fondo, en el cual está enclavada una casa marcada con el número 11; que desde que estaba pequeño, desde que estaba con su madre, vive ahí como suyo; que su madre murió antes de la guerra con España y antes del ciclón de San Ciriaco, en la dominación española; que no sabe quién sería dueño entonces y sí que vivía allí con su madre y se ha criado allí hasta la fecha habiendo tenido 20 hijos ahí; que nadie le ha exigido nada hasta ahora el Sr. Pesquera.

"Repreguntado por el abogado del demandante, dice: que es panadero; que nació en la calle de Santa Cruz, pero se fué pequeño; que no sabe cuántos años vivió en la calle de Santa Cruz; que desde que se mudó de la calle de Santa Cruz vive con su madre en 'Maturí;' que no sabe quien vivía ahí antes; que no ha conocido como dueño del terreno mas que a su madre, la cual murió antes de San Ciriaco, sin que pueda precisar si murió antes de 1904 o después; que la casa perteneció a su mamá sin que sepa a quien ésta se la compró; que paga contribuciones, pero rehusa determinar si paga por la casa o por el solar, expresando que paga una sola contribución; que hace

8 ó 10 años el Sr. Pesquera lo está demandando a cada rato; que no puede decir los años.

"Vuelto a preguntar por su abogado, dice: que siempre ha vivido ahí como dueño desde que fué con su madre.

### "DECLARACIÓN DEL DEMANDADO MIGUEL GONZÁLEZ.

"Manifiesta, a preguntas de su abogado: que tiene una casa que antes estaba marcada con el número 22 y hoy con el 1, de 10 pies de frente por 10 de fondo, siendo de él casa y solar, por haberlo heredado de su madre cuando ésta murió hace 40 años; que sabe que su mamá tiene 40 años de muerta porque cuando él nació la casa era de ella y cuando ella murió él quedó poseyéndola como de él; que su madre era dueña del sitio en que vivía, habiéndolo adquirido por compra a otro cuyo nombre no recuerda; que nadie ha ido a cobrar; que el Sr. Pesquera le ha demandado porque le ha ido a cobrar; que antes de Pesquera ninguna persona le había cobrado alquileres.

"A repreguntas del abogado del demandante, dice: que su madre se llamaba Lucrecia Velázquez, la cual tiene como 40 y pico de años de muerta, sin que tenga esto en la memoria; que es jornalero; que desde que nació ha vivido allí y no sabe si cuando su mamá compró y siguió viviendo allí lo hizo con permiso del Obispo; que durante todos esos años que ha habido litigio entre él y Pesquera no ha oído decir a nadie que eso perteneció a la Iglesia.

### "DECLARACIÓN DEL DEMANDADO ATILANO RIVERA.

"Dice, a preguntas de su abogado: que ocupa un solar de 18 pies de frente por 40 de fondo, que tiene una casa marcada con el número 1 antes y hoy con el 149, cuya casa y solar posee como de él hace como algunos 30 años, habiéndola comprado a un tal Benito Chevres, el cual le dijo que era dueño de la casa y el solar; que vive en ese solar y casa desde hace 25 ó 30 años, sin que en ese tiempo nadie le haya exigido pagar alquileres ni salir de ahí, no sabiendo por qué es que lo ha demandado Don José Jesús Pesquera.

"A repreguntas del abogado del demandante, dice: que compró a Benito Chevres un rancho en escombros; que le compró el sitio para fabricar; que no recuerda el año, pero que le pagó 25 pesos por un rancho viejo; que no ha sido requerido ni ha estado en juicio; ninguno, excepto en éste; que fué citado para un juicio en la Corte Federal, que decía el abogado que no tenía que venir ninguno.

"Vuelto a preguntar por su abogado, dice: que pagó a Benito Chevres 25 pesos por el sitio en que vivía.

"DECLARACIÓN DE LA DEMANDADA JULIANA ACEVEDO.

"Preguntada por su abogado, dice: que vive en 'Maturí' en un solar de 20 pies de frente por 42 de fondo y tiene una casa marcada con el número 115, de todo lo cual es dueña ella desde niña; que allí nació ella y han muerto su padre y su madre, por cuya razón ella dice que es dueña de la casa y del sitio también; que su padre murió cuando ella tenía año y medio de nacida y su madre cuando tenía seis años, desde cuyas fechas es ella dueña, sin que haya conocido al Sr. Pesquera por todo aquello, ni haya oído decir que eso era del Obispo ni de la Iglesia, ni que ninguna persona fuera dueña de ese sitio.

"Repreguntada por el abogado del demandante, dice: que, a su corto conocimiento, tiene 45 años más o menos y tenía 6 cuando murió su mamá y desde entonces ha vivido sola en la casa; que su mamá le decía que la casa pertenecía a su padre (de la declarante); que ella era hija única sin que sus padres fueran casados.

"DECLARACIÓN DE LA DEMANDADA DOMINGA MARÍN.

"Contesta, al ser preguntada por su abogado: que tiene un solar de 16 pies de frente por 40 de fondo en el que está una casa marcada con el número 4, cuya casa y solar dice que es de ella porque lo posee desde su padre y después de su madre, la cual tiene 5 años de muerta; que su madre adquirió de su padre (de la declarante) lo cual sabe porque ella se lo decía; que vive ahí desde el 81, sin que nadie la haya requerido para pagar alquileres ni haya oído decir que esos terrenos son de otros; que no vió nunca pasar por allí al Sr. Pesquera en la dominación española; que no sabe cómo se hicieron dueños sus padres de ese solar y casa.

"A repreguntas del abogado del demandante, dice: que primero tenía una casita allí y luego la cambió por otra; que hace 5 años que murió su madre y su papá murió para la tormenta de San Felipe, sin que sepa en qué año; que fué su madre la que hizo el cambio de la casa, pues su padre había muerto ya; que las dos casas eran en 'Maturí,' sin que sepa si fué hace más o menos 10 años; que ha vivido en la casa que tiene ahora desde que murió su madre; que no sabe quién era el dueño de 'Maturí' antes de ser Pesquera; que nunca ha conocido a Pesquera como dueño ni sabe decir con qué permiso su papá tenía casa allí; que no sabe nada más sino que algunos 2 ó 3 años antes de morir su mamá, ésta obtuvo la casa que vive ahora la declarante por cambio de otra que tenía en otro sitio; que el Sr. Pesquera siempre está demandándolos.

"Vuelve a interrogarla su abogado y le hace esta pregunta: 'Ud. dijo que vivía ahí desde el 81. ¿Es así, Ud. dijo eso?', a la cual contesta la declarante: 'Yo vivo ahí desde el 81 en la casa esa que estoy, que la cambió mi mamá.'

"Sigue declarando, siempre a preguntas de su abogado, y dice: que cuando su mamá murió hace 5 años ya había cambiado esa casita por la otra; que este cambio lo hizo la madre como 2 años antes de morir; que otro señor tenía otra casa más arriba y la madre se la cambió por esa más abajo 2 años antes de morir; que esa casa que vive ahora es la marcada con el número 4 y hace 7 años que la ocupa; que tenían otra casa en el año 81 y después su mamá la cambió más abajo antes de morir.

"Preguntada por el juez, dice: que su mamá cambió una casa en el 81 y no se ha vuelto a cambiar desde entonces.

"Sigue repreguntando a la declarante el abogado del demandante, y ella ratifica lo dicho anteriormente de que la casa había sido cambiada por su madre 2 ó 3 años antes de morir y que esta muerte ocurrió hace 5 años. A la pregunta de si en el año 1881 era antes o después de San Ciriaco, contesta que de San Ciriaco no dice nada.

"En este estado el abogado de los demandados viene en auxilio de la declarante y manifiesta que ésta no entiende las preguntas del Sr. Anderson. Entonces el Sr. Juez pregunta a la declarante, fijando como punto de partida el hecho del temporal de San Ciriaco, y la declarante contesta; que el cambio de la casa tuvo lugar después del temporal de San Ciriaco.

"DECLARACIÓN DEL DEMANDADO ENRIQUE SALGADO.

"Preguntado por su abogado, dice: que vive en 'Maturí,' en una casa cuyo número anterior era el 9 y hoy es el 13, cuyo solar mide 10 pies de frente con 40 de fondo, siendo de su propiedad ese solar y esa casa desde hace 8 ó 10 años; que esa casa era de Luis López y la compró su suegra, que es Dominga Marín, la señora que estaba declarando ahora; que Luis López no vivía en esa casa, sin que sepa si la tenía alquilada o no; que su suegra vive a 8 ó 10 metros de distancia de él, en una casa marcada con el número 4, en la cual vive desde que la conoce, conociéndola desde niño y tiene hoy 38 años.

"A repreguntas del abogado del demandante, dice: que su suegra compró esa casa a Luis López hace 8 ó 10 años para el declarante, porque éste casó con una hija de ella.; que ésta pagó 45 pesos y Luis López no le otorgó escritura; que no sabe el tiempo que vivió en esa casa Luis López; que desde niño vive en 'Maturí' y no ha conocido

a nadie como dueño ni nadie ha ido a cobrar hasta ahora Don José Jesús Pesquera; que anteriormente no pagaba contribución porque era un rancho viejo, pero ahora paga 60 centavos de contribución, sin que sepa por lo que es, pues allí le midieron la tierra y el frente y el fondo y no sabe si le cobran terreno o casa; que allí nadie compra por escritura, sino que se entrega la cosa, se paga el dinero y está acabada la transacción; que tuvo un pleito con el Sr. Pesquera en la Corte Federal.

## "DECLARACIÓN DEL DEMANDADO SALOMÉ FERNÁNDEZ.

"Vuelve a declarar el demandado Salomé Fernández, y, a preguntas de su abogado, dice: que conoció a Luis López, el cual era dueño de una casa en 'Maturí,' la cual vendió a Dominga Marín; que Luis López la había comprado a Amalia Blanco, quien la había fabricado antes de nacer un hijo del declarante que tiene cerca dè 32 años; que Enrique Salgado tenía relaciones con una hija de Dominga y ésta compró la casita para regalársela; que Enrique y la hija de Dominga viven la casa hoy.

## "DECLARACIÓN DE LA DEMANDADA RAMONA TIRADO.

"A preguntas de su abogado, dice: que vive en un solar que tiene 16 pies de frente por 40 de fondo, donde hay una casa con el número 12; que vive ahí hace 20 ó 25 años, habiendo adquirido de María Monserrate, la abuelita de Sánchez, la que a su vez era dueña del solar, pues ella misma lo decía; que María Monserrate tenía ese solar hacía 70 y pico de años y la declarante se lo compró en 30 pesos.

"Repreguntada por el abogado del demandante, dice: que hace tres años viene pagando contribución, no habiendo pagado antes por ser su casa un rancho; muestra un recibo en que aparece que paga únicamente por la casa, pero insiste en que paga por todo; que conoce a 'Maturí' desde hace mucho tiempo y no ha conocido a nadie como dueño; que una vez entabló una demanda contra el Sr. Pesquera, pero no se efectuó.

## "DECLARACIÓN DEL DEMANDADO MARCELINO CHAVER.

"A preguntas de su abogado, declara: que es dueño de una casa marcada con el número 9, habiéndola adquirido por compra a una señora muy vieja llamada Siña Paula, hace como 40 años, y durante ese tiempo ha venido viviendo allí, sin que nadie le haya cobrado alquileres; que una vez lo demandaron en la Corte Federal queriendo cobrar allí; que nunca ha sido requerido para pagar alquileres.

"Repreguntado por el abogado del demandante, dice: que no sabe quién daba permiso para vivir allí.

"SALOMÉ FERNÁNDEZ.

"Es llamado nuevamente por su abogado y dice, al ser preguntado, que Inés Marín vive en el corral de su casa, sin que tenga solar propio."

Conocidas las pruebas, examinemos si la excepción opuesta por los demandados a la presentación por el demandante del expediente de conversión de la posesión en dominio, está o no bien fundada. Dicha oposición se basó únicamente en que la conversión era nula por no haber transcurrido los veinte años que requería la Ley Hipotecaria. Esta cuestión fué resuelta por esta Corte Suprema en el caso de *Damers et al. v. El Registrador,* 20 D. P. R., 208. El término de veinte años que exigía el artículo 393 de la Ley Hipotecaria, fué reducido a seis por la Orden Judicial de abril 4, 1899. En tal virtud, habiéndose inscrito el expediente posesorio en 1894 y su conversión en dominio en 1911, es bien claro que el plazo de seis años transcurrió con exceso no ya contado, desde 1894, sino computado desde el 4 de abril de 1899 en que se aprobó la orden judicial, y que, por consiguiente, la posesión pudo declararse convertida en dominio de acuerdo con la orden judicial sin aplicar la cláusula retroactiva de la misma. La decisión de la corte admitiendo la prueba fué, pues, enteramente correcta.

Estudiemos ahora si la prueba demuestra la existencia de la cosa juzgada alegada por el demandante, no dejada de decidir como sostiene el apelante, sino decidida implícitamente por el juez de distrito en su sentencia. Aparece de la prueba que los demandados o algunos de ellos se opusieron a que se convirtiera el expediente posesorio de la finca "Maturí" en dominio y que su oposición fué desestimada por defectos de forma. Aun cuando la oposición hubiera sido desestimada en el fondo, la resolución de la corte no constituiría cosa juzgada con respecto a los derechos de los opo-

nentes.  Véase *El Pueblo* v. *Dimas et al.,* 18 D. P. R., 1061, 1085.·

Veamos, por último, si la corte cometió o no algún error manifiesto al apreciar la prueba considerándola como demostrativa de que el demandante no es dueño de los solares ocupados por los demandados, sino que por el contrario los demandados son dueños legítimos de los mismos.

La acción principal ejercitada por el demandante en este caso, es la reivindicatoria, o sea la que compete al dueño de una cosa contra el que la posee o la detenta.  Es indispensable en la reivindicación que el demandante justifique, no sólo el derecho con que pide la cosa detentada, sino la identidad de la cosa misma.

En este caso no hay cuestión alguna con respecto a la identidad de la cosa reclamada.  Las casas de los demandados se levantan sobre solares cuya extensión se fija, comprendidos todos dentro de los límites de la finca denominada "Maturí" cuyo dominio en su totalidad se encuentra inscrito en el registro a favor del demandante.  La controversia está limitada exclusivamente a si es el demandante el verdadero dueño de los solares en cuestión o a si lo son los demandados.

A nuestro juicio, si examinamos aisladamente la prueba del demandante, tenemos que concluir que demuestra un título *prima facie* bueno y suficiente para acreditar su dominio sobre la totalidad de la finca "Maturí" y por consiguiente sobre las porciones de ella ocupadas por los demandados. En 1894 el Obispado de Puerto Rico se acogió a los beneficios de la Ley Hipotecaria y tramitó un expediente para acreditar su posesión en concepto de dueño de la finca de que se trata, por haberla adquirido por concesión héchale por el Obispo Zengotita hacía el espacio de noventa años.  El expediente fué resuelto favorablemente e inscrito en el registro. En el mismo año de 1894 el Obispado vendió la finca al demandante Pesquera y éste inscribió su título en el registro de la propiedad.  Y en el año de 1911, Pesquera, siguiendo los trámites marcados por la Ley Hipotecaria, enmendada por

la Orden Judicial de 4 de abril de 1899, convirtió su título posesorio en título de dominio e inscribió la conversión en el registro de la propiedad.

Si tuviéramos que decidir, pues, el caso, por la prueba del demandante, la sentencia que tendríamos que dictar sería enteramente favorable a sus pretensiones. Veamos si la prueba de los demandados destruye o no el título bueno *prima facie* del demandante. Dicha prueba consistió como hemos dicho en las declaraciones de doce de los trece demandados. El juez sentenciador que los oyó declarar, les dió entero crédito y entero crédito también debemos darle nosotros en ausencia de una demostración cumplida por parte del apelante de que sus manifestaciones eran falsas, o de que el juez sentenciador al resolver el conflicto existente entre dichas manifestaciones y las resultancias del expediente posesorio, del de conversión en dominio, y de la declaración del demandante, había actuado movido por pasión, prejuicio, o parcialidad, o había cometido un claro y manifiesto error.

Partiendo de la base indicada, el juez sentenciador declaró probado:

"4°. Que al tiempo de la declaración de posesión de la finca 'Maturí' a favor de la Mitra, en abril de 1894, se encontraban en la posesión real de varias partes de la misma, en concepto de dueños y habitando casas construídas por ellos, algunos de los demandados y los antecesores y vendedores de los otros.

"5°. Que los demandados han venido poseyendo quieta y pacíficamente y en concepto de dueños las referidas porciones de la finca 'Maturí' por espacio de más de treinta años y se encuentran hoy en posesión cada demandado respectivamente del solar y casa descritos en el párrafo quinto de la demanda enmendada.

"6°. Que el demandante Pesquera, desde el tiempo de haber comprado la finca 'Maturí' de la Mitra hasta hoy, nunca ha estado en posesión de aquellas partes de la finca posesionadas por los demandados; y hasta el año 1907 el demandante adeudaba todos los réditos del censo desde la fecha del otorgamiento de la escritura de venta a su favor por la Mitra.

"7°. Que los demandados, o los antecesores o vendedores de ellos,

que estuvieron en posesión de la finca 'Maturí' cuando fué promovido el expediente posesorio a favor de la Mitra no fueron citados para comparecer a la vista de dicho caso ni tenían conocimiento alguno en su tramitación.''

Hemos examinado cuidadosamente la prueba de los demandados y a nuestro juicio es suficiente para sostener los hechos anteriormente transcritos, pero limitándolos a los demandados Salomé Fernández, Gabina Figueroa, Maximino Torres, José Sánchez Cruz, Marcelino Pardo, Miguel González, Juliana Acevedo, Dominga Marín, Enrique Salgado, Ramona Tirado, y Marcelino Chaver. Aceptadas como ciertas las declaraciones de estos demandados, puede concluirse que cuando se tramitó el expediente posesorio y cuando se convirtió en dominio, ellos, personalmente o por medio de sus antecesores, se encontraban en la posesión de sus respectivos solares en concepto de dueños, y que tal posesión en tal concepto databa de más de treinta años a la fecha de la interposición de la demanda. Alguna duda hemos tenido al apreciar la declaración del demandado Marcelino Pardo en el sentido que hemos indicado, pues a primera vista no establece un punto de partida fijo para comenzar a contar la prescripción; mas, como el dicho demandado declaró personalmente ante el juez sentenciador y dijo que desde pequeño fué a vivir al solar de que se trata con su madre que murió antes de la guerra con España, antes del ciclón de San Ciriaco, y la corte pudo apreciar su edad, hemos considerado que debíamos resolver la duda en favor de la conclusión a que llegara el juez sentenciador.

Apreciada la prueba practicada en este caso en conjunto, deja la impresión de que es cierto que la finca "Maturí" perteneció a la Iglesia. Debido sin duda al hecho de hallarse a orillas de un pueblo y a la misma circunstancia tal vez de pertenecer a la Iglesia desde hacía más de noventa años, muchas personas, unas con permiso y otras sin él, penetraron en ella, se posesionaron de pequeñas porciones de terreno

y fabricaron sus casas. La misma prueba del demandante demuestra que en 1894 cuando la Iglesia le vendió la finca "Maturí" en mil pesos que no pagó de contado sino que garantizó con un censo impuesto sobre la finca, había en ella cincuenta inquilinos que hubo necesidad de requerir judicialmente. Unos parece que abandonaron la finca, pero otros quedaron allí sosteniendo que eran dueños. Entre los que quedaron, figuran según el mismo demandante, tres de los demandados, y si todos los ocupantes fueron requeridos y si son ciertas las declaraciones de los demandados cuyos nombres hemos especificado anteriormente, todos personalmente o por medio de sus antecesores, se encontraban allí y opusieron desde entonces su derecho al derecho del demandante. Cerca de veinte años habían transcurrido cuando el demandante ejercitó en este pleito la acción reivindicatoria, sin que durante todo ese período de tiempo hubiera obtenido el desalojo de los dichos demandados. Hay sin duda algo informal en el fondo de este pleito. Las declaraciones de los demandados que hemos nombrado pudieran haber sido más claras, más específicas. Tal vez ellos entraron a poseer personalmente o por medio de sus antecesores sin permiso y sabiendo que la Iglesia era dueña, pero es lo cierto que pasaron los años, y que se ha presentado prueba de que por lo menos durante un período continuo de treinta antes de la interposición de la demanda, poseyeron como dueños, sin pagar canon alguno por la tierra. Si la primitiva dueña, la Iglesia, abandonó su derecho y si el demandante que adquirió de ella no ha sabido o no ha podido ejercitarlo en tiempo, deben ambos sufrir las consecuencias de sus propios actos. El dominio se pierde o se adquiere por la prescripción, y para adquirir por la prescripción extraordinaria de treinta años, no es necesario ni el justo título, ni la buena fe.

En cuanto al demandado Atilano Rivera, su declaración, aun estimándola cierta, no demuestra una ocupación del terreno en concepto de dueño por treinta años con anteriori-

dad a la demanda. El dicho demandado no pudo oponer un título contrario más fuerte al del demandante y el de éste queda en todo su vigor y eficacia.

El demandado Inés Marín no compareció al acto del juicio en la corte sentenciadora, y otro de los demandados, Salomé Fernández, declaró que vivía en el corral de su casa sin que tuviera solar propio. Cuando el demandante Pesquera declaraba, comenzó a describir cada uno de los sitios que ocupaban los demandados en la finca ''Maturí'' y el abogado de los demandados admitió las descripciones tales como constaban en la demanda, y en la demanda consta que Inés Marín ocupa un solar de 12 pies de frente por cuarenta de fondo con casa marcada con el número 86. La corte sentenciadora por virtud de orden de 17 de mayo de 1914, decretó que se registrara una resolución *nunc pro tunc,* para ajustar su sentencia de 12 de enero a la decisión dictada, declarando que los demandados a excepción de Inés Marín eran dueños de los solares que ocupaban. Si tuviéramos que apreciar la prueba, diríamos que para resolver la contradicción que resulta entre el dicho del testigo y la admisión del abogado de los demandados, debería prevalecer la última, y que no habiendo el demandado Inés Marín demostrado en forma alguna que ocupe con derecho el solar descrito en la demanda, ésta, en cuanto a él, debe ser declarada con lugar. Sin embargo, como no aparece claro que la corte inferior ejercitara su discreción en tal sentido, opinamos que debemos decidir el caso de Inés Marín en la forma que más adelante indicaremos.

Otra cuestión que debe considerarse es la de si el pronunciamiento de la sentencia debe extenderse, en cuanto a los once demandados nombrados primeramente, a declarar que los solares que ocupan les pertenecen en pleno dominio y a decretar la nulidad del título del demandante y la cancelación de su inscripción en el registro, en cuanto afecta a los

derechos de dichos demandados, o si debe limitarse a declarar sin lugar la demanda y sin lugar también la contrademanda por virtud de la cual los contrademandantes, unidos todos, solicitaron que se les reconociera como dueños de las tierras que ocupaban; que se declarara la nulidad del expediente posesorio y su conversión en dominio en cuanto pudiera afectarles, y que se ordenara la cancelación de sus inscripciones en el registro de la propiedad.

De haber los demandados acudido por su propia voluntad a los tribunales en solicitud de los pronunciamientos suplicados en su contrademanda, es por lo menos dudoso que hubieran podido hacerlo conjuntamente de acuerdo con lo dispuesto en el artículo 65 y siguientes del Código de Enjuiciamiento Civil, y como, además, de las declaraciones de los demandados se deduce que pudieran existir otras personas, familiares de los demandados, que tuvieran derecho sobre los solares en cuestión, la sentencia debe limitarse a resolver aquello que quedó en realidad de verdad debida y finalmente planteado y aclarado, a saber: si el demandante es en la actualidad el verdadero dueño de los solares que reclama.

A nuestro juicio su título sobre toda la finca "Maturí" puede considerarse bueno y suficiente, pero sin eficacia legal en cuanto a los solares ocupados por los demandados Salomé Fernández, Gabina Figueroa, Maximino Torres, José Sánchez Cruz, Marcelino Pardo, Miguel González, Juliana Acevedo, Dominga Marín, Enrique Salgado, Ramona Tirado, y Marcelino Chaver, porque si bien resulta que su antecesor fué tal vez dueño antiguamente de dichos solares, perdió, por prescripción, su derecho sobre ellos. El título del demandante es eficaz en cuanto al solar ocupado por el demandado Atilano Rivera. También lo es en cuanto al ocupado por el demandado Inés Marín, pero como este último extremo no ha sido decidido claramente por la corte sentenciadora, debe darse a ésta una oportunidad para que fije sus conclusiones de hecho y de derecho.

En cuanto a las solicitudes de daños y perjuicios hechas por las partes, no se ha presentado prueba específica alguna de los que se hayan podido causar.    Ambas pretensiones deben desestimarse.

Por virtud de todo lo expuesto opinamos que debe confirmarse la sentencia apelada solo en cuanto declara sin lugar la demanda con respecto a los demandados Salomé Fernández, Gabina Figueroa, Maximino Torres, José Sánchez Cruz, Marcelino Pardo, Miguel González, Juliana Acevedo, Dominga Marín, Enrique Salgado, Ramona Tirado y Marcelino Chaver, y revocarse en todos los demás pronunciamientos que contiene, debiendo declararse con lugar la demanda en cuanto al demandado Atilano Rivera ordenándosele que desaloje el solar que ocupa en la finca "Maturi," dentro del término de veinte días contados a partir del de la notificación de esta sentencia.  La corte de distrito procederá a dictar sentencia declarando con lugar la demanda en cuanto al demandado Inés Marín, o a celebrar un nuevo juicio para aclarar los derechos del demandante y del dicho demandado Inés Marín, en el caso de que la corte no hubiere apreciado la prueba practicada como demostrativa de que Inés Marín ocupa sin derecho alguno el solar descrito en la demanda. La contrademanda debe declararse sin lugar, y, en atención a las circunstancias concurrentes, cada parte deberá pagar sus costas.

> *Confirmada la sentencia apelada sólo en cuanto declara sin lugar la demanda con respecto a 11 de los demandados y revocada en todos sus demás pronunciamientos.*

Jueces concurrentes: Sres, Asociados Wolf, Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no formó parte del tribunal en la vista de este caso.