SIRAGUSA ET AL. *v.* EL PUEBLO DE PUERTO RICO ET AL.

APELACIÓN procedente de la Corte de Distrito de Arecibo.

No. 724.—Resuelto en junio 24, 1912.

ACCIÓN REIVINDICATORIA—LAGUNA O CAÑO DE TIBURONES—TIERRAS PANTANOSAS.—El hecho de que todas las tierras que formaban parte de la primitiva Laguna o Caño de Tiburones, son de la propiedad de El Pueblo de Puerto Rico, no quiere decir, como consecuencia necesaria, que porque dicha laguna

o caño antiguamente cubriera una gran extensión de terreno entre Arecibo y Barceloneta o 'porque las aguas se han retirado, o porque una parte considerable de los terrenos pantanosos de dicha región estuvieren antiguamente cubiertos por las aguas de la laguna o del caño, que todos los terrenos húmedos o pantanosos que se encuentran hoy día en esa región pertenecen necesariamente a El Pueblo de Puerto Rico, como parte de las tierras que formaban dicha laguna.

ID.—CAÑO DE TIBURONES.—La palabra caño aplicada al Caño de Tiburones de Arecibo, no debe interpretarse en el sentido de que solamente comprende la anchura actual del canal o·corrientes de las aguas que es aproximadamente de 708 metros.

ID.—IDENTIFICACIÓN DE LA FINCA—TÍTULOS.—Examinada la prueba en el caso de autos, el tribunal resolvió que los títulos presentados por los demandantes, para justificar el dominio de las fincas que reclaman, no demuestran claramente, ni se ha justificado con otra prueba, que dichos títulos se refieren a las tierras en litigio.

ID.—EXTENSIÓN SUPERFICIAL EXACTA DEL TERRENO QUE SE RECLAMA.—En una acción reivindicatoria es un requisito indispensable que el demandante determine de un modo preciso y concreto la extensión superficial de la propiedad que trata de reivindicar y en el caso de autos, el tribunal resolvió que los demandantes no habían cumplido con este requisito, pues no han determinado con exactitud la dimensión exacta del terreno que pretenden reivindicar y que forma parte de una finca mayor de la cual están en posesión.

ID.—IDENTIFICACIÓN DE LA FINCA—LINDEROS INDEFINIDOS.—Examinada la prueba practicada en el caso de autos, este tribunal, resolvió que los linderos sur, este y oeste de la finca en litigio no han sido alegados ni probados de una manera definida, clara y precisa. La colindancia sur se dice ser el Caño de Tiburones, pero sin alegar la longitud ni distancia en punto concreto para determinar hasta qué parte del caño llega la finca, pues no se ha probado de una manera clara y terminante la anchura o extensión del caño. La colindancia este no ha sido probada de una manera que permita precisar la distancia a que llega la finca por el este. La colindancia oeste alegada por los demandantes fué contradicha por el mismo colindante, quien declaró que él no colindaba al oeste con la totalidad de la finca en litigio, sinó al oeste de la finca de la cual están en posesión los demandantes.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Eduardo Acuña y Emidgio S. Ginorio.*

Abogados de los apelados: *Sres. Foster V. Brown, Attorney General, y J. H. Brown.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

En la demanda presentada en este caso se alega entre otras cosas, que los demandantes eran los únicos y universales herederos de Antonio Roses Bisbal; que en 27 de mayo de 1889 y mediante una escritura pública, el referido Anto-

nio Roses Bisbal adquirió la finca número 855 a título de
compra a Ramona Balseiro Macías, siendo la descripción de
dicha finca la siguiente: Finca rústica radicada en el tér-
mino municipal de Arecibo, barrio del Islote, cuyo nombre
lleva, sitio de *La Burrada,* que mide más o menos 390 cuer-
das de terrenos de pastos y cortadera, encierra una casa para
habitación, y colindando al norte con la ribera marítima; al
sud con el Caño de Tiburones; al saliente con tierras de
José Manuel Alvarez, y al poniente con las de Gregorio Pas-
toriza. Que por traspasos sucesivos y transferencias de título
adquirieron los demandantes de José Manuel Alvarez y Al-
varez la finca situada hacia la parte este de la finca 855 que
ya se ha descrito, siendo la descripción de la segunda finca
rústica la siguiente: Finca radicada en el barrio del Islote,
del término municipal de Arecibo, constante de 156 cuer-
das y una fracción, colindante por el norte con el camino de
Palmas Altas; por el sur con el Caño de Tiburones; por el
este con tierras de Joaquín de Santiago, y por el oeste con
otras tierras de Antonio Roses, o sea la finca descrita ante-
riormente, cuya segunda finca lleva el número 1504.

Alegan además los demandantes que adquirieron una ter-
cera finca que lleva el número 1644, cuya descripción es la
siguiente: Finca rústica radicada en el Barrio del Islote
del término municipal de Arecibo, constante de 150 cuerdas,
colindante al norte y este con tierras de Nicolasa Colón;
al sud con el Caño de Tiburones; y al oeste con tierras del
mismo predecesor en título de los demandantes, o sea An-
tonio Roses Bisbal, siendo la finca la número 1504 arriba
descrita. La demanda sigue expresando que estas tres fin-
cas se encuentran contiguas unas a otras y contituyen un
solo cuerpo de tierra bajo la siguiente descripción, a saber:
finca rústica radicada en el Barrio del Islote, lugar de La
Burrada, del término municipal de Arecibo, constante de 696
cuerdas con 60 céntimos, colindantes por el norte, con la
ribera marítima, el camino de Palmas Altas o Barceloneta

y tierras de Nicolasa Colón; por el sud con ·el Caño de Tibu-
rones y por el oeste, con tierras de Gregorio Pastoriza.

La alegación octava de la demanda, es la de que. los de-
mandantes son los dueños de la referida finca y la han po-
seído quieta, pacífica y totalmente con buena fe y justo título,
por un término no interrumpido que excede de 15 años hasta
el día 4 de junio de 1910.

En el párrafo noveno se alega que el día 4 de junio,
1910, el Fiscal de la Corte de Distrito de Arecibo sin título
legal alguno penetró en la finca de los demandantes acom-
pañado de varias personas más y. después de marcar con
varios puntos sobre el terreno una línea que corriendo en
dirección de este a oeste divide la finca aproximadamente
por su mitad, ocupó en nombre de El Pueblo de Puerto Rico
la porción ·de terreno comprendida entre dicha línea y el Caño
de Tiburones, y despojando de ella a los demandantes, puso
en posesión de la misma a Wenceslao Borda en representa-
ción de dicho Pueblo de Puerto Rico, ordenando a los allí
presentes no lo inquietasen en dicha posesión.

Alegaron entonces los demandantes que algunos días des-
pués del referido 4 de junio, varios operarios bajo las órde-
nes de Wenceslao Borda levantaron una cerca de madera y
alambre sobre la línea trazada por el Fiscal, dejando con
ella completamente dividida la finca de los demandantes, e
impidiendo en absoluto a éstos el uso y difrute de la por-
ción de terreno comprendida entre la cerca y el Caño de
Tiburones; que la citada porción de finca de que han sido
despojados los demandantes comprende una superficie de
435 cuerdas y una fracción de terreno firme, cultivado en
parte y el resto de monte y de pastos, en cuya última parte
de pastos se encontraban pastando varias reses vacunas al
ocurrir el despojo de referencia, siendo las colindancias de
dicha porción despojada las siguientes: al norte el resto
de la finca de los demandantes, de la cual separa la cerca a
que se contrae la precedente alegación; al este, tierras de
Basilio Reyes antes de Juan José Tirado y anteriormente

de Juan Bautista Salicrup; al sud el Caño de Tiburones, y al oeste con dicho caño y tierras de Gregorio Pastoriza. Los demandados negaron todas las alegaciones esenciales contenidas en la demanda.

La corte inferior después de hacer referencia a los precedentes hechos sostiene en su opinión que los terrenos cubiertos por las aguas del Caño de Tiburones, o Laguna, son de dominio público mientras no se justifique que pertenezcan a alguna persona, o que han pasado a ser propiedad particular por los medios que las leyes establecen. Continúa la opinión sosteniendo, que de acuerdo con el reglamento publicado en abril de 1884, son terrenos realengos, todas las tierras que no tengan dueños legítimos o lo que es lo mismo, que no hayan pasado nunca al dominio privado, que por virtud del artículo 8°. del Tratado de Paz, toda la propiedad que entonces pertenecía a la Corona de España pasó a los Estados Unidos y a su vez los Estados Unidos cedieron estas propiedades a El Pueblo de Puerto Rico.

Sentados estos hechos como premisas, la corte pasa entonces a examinar si alguno de estos terrenos que reclaman los demandantes estaba incluído dentro del perímetro de las tierras pertenecientes a la Laguna o Caño de Tiburones. La corte consideró en vista de la prueba, que la mayor parte de las 435 cuerdas que trataban de reivindicarse no era terreno firme sino húmedo o terreno pantanoso. La prueba en verdad demuestra que una gran parte de la finca de los demandantes se compone de cortadera y poyales, habiéndose admitido que cortadera y poyales son plantas que crecen únicamente en los terrenos pantanosos o sitios húmedos. La corte expresa en su opinión que la prueba presentada por los demandantes y demandados en el presente caso la llevó a la conclusión de que las fincas en litigio sino todas, por lo menos la mayor parte de ellas, pertenecían a El Pueblo de Puerto Rico; que todas las fincas inundadas por las aguas del caño son de dominio público, demostrando la prueba del

demandado que la cerca se había puesto en la línea divisoria entre la finca inundada y el terreno seco o firme.

Cita el juez la opinión de la Corte Federal en el caso de *Marcelis* v. *Graham*, 5 Federal Reports, 423, para demostrar la naturaleza del Caño de Tiburones y su situación y que todos los terrenos inundados pertenecían a El Pueblo de Puerto Rico.

No creemos que sea necesario seguir a la corte en todos sus razonamientos. Se ha demostrado de modo evidente que las fincas que se dice que han formado parte de la laguna primitiva o caño, pertenecen a El Pueblo de Puerto Rico; pero no creemos que debe inferirse de esto que porque existiera anteriormente una laguna que cubría una gran parte entre Arecibo y Barceloneta, y que algunas de sus aguas se han retirado, o porque una parte considerable de los terrenos pantanosos en esa región estuvieron una vez cubiertos de agua del canal o lago, que los terrenos pertenecientes a El Pueblo de Puerto Rico comprenden necesariamente todos y cada uno de estos sitios pantanosos o lugares húmedos que se encuentran en la vecindad. Puede que a veces el canal se haya salido de madre y que haya continuado así debido a las condiciones de la marea y dando esto por resultado que algunos terrenos que antes eran firmes se hayan convertido en pantanosos y que en ellos hayan podido crecer poyales y cortaderas; y según la prueba tampoco estamos satisfechos de que algún ingeniero en el año 1908 o con anterioridad a esa fecha hiciera una mensura y plano de los terrenos que estaban comprendidos en el Caño de Tiburones. Nunca se demostró que dicho plano o cálculo fuera otra cosa sino la opinión del ingeniero que hizo la mensura; ni se presentó ningún mapa o plano que demostrara la extensión precisa de la laguna.

Creemos sin embargo que la sentencia en este caso tendrá que confirmarse por otros fundamentos y algunas de nuestras consideraciones están conformes con la opinión de la corte inferior. Los demandantes demostraron que estaban

en posesión por lo menos de una parte de la finca que reclaman y que una parte de la misma estaba cultivada desde hacía algunos años; pero no estamos convencidos de que los títulos que ellos han presentado en este caso incluyan o comprendan las tierras que reclaman. Parece que existía alguna probabilidad acerca de que sus fincas se extendían al sur de la cerca a que se refieren los demandados, pero los títulos y la prueba no demuestran con la certeza que requiere un pleito de esta clase, la verdadera colindancia del sur de dichas fincas que ahora reclaman. Hay testigos que expresan que la colindancia del sur es el actual canal o corriente del llamado Caño de Tiburones, cuya corriente se ha dicho que es de unos 7 u 8 metros de ancho, pero esta supuesta prueba que ha sido dada principalmente por los testigos de los demandantes es en su mayor parte una mera afirmación. Los testigos expresan que la finca llegaba hasta la corriente o canal; no dicen de donde obtuvieron este conocimiento ni tampoco demuestran que la descripción de la finca contenida en los títulos comprendiera actualmente la finca hasta el canal o corriente. Convenimos con la corte sentenciadora en que la palabra "caño" no se ha limitado solamente al canal o corriente actual de 7 u 8 metros.

Además, no se ha formulado alegación clara y concreta acerca de la colindancia del este de la finca de los demandantes. En la finca número 1644 que es la que está más hacia el este de las tres fincas que formaban el conjunto, aparece Nicolasa Colón al norte y al este y no hay prueba alguna que demuestre exactamente a qué distancia se encontraba Nicolasa Colón de Pastoriza al oeste. La prueba demuestra, y lo admiten los demandados, que Gregorio Pastoriza es la colindancia del oeste de las fincas de los demandantes, según aparece de sus títulos, que se encuentran inscritos en el registro. También admiten los demandados que la colindancia del norte de las fincas número 855 y 1504 están bien fijadas; pero impugnan la situación de la finca número 1644 y alegan que los demandantes no han descrito de modo claro la situa-

ción de la finca número 1644 con respecto a las otras dos. La descripción demuestra que la finca 1644 era contigua a la otra de Roses, siendo la prueba muy vaga con respecto al lugar y forma en que tales fincas eran contiguas. Sin embargo, aun suponiendo que fuera contigua o que en parte se encontrara en línea recta con las otras dos porciones de la finca, su extensión actual en la parte este no se ha demostrado. No aparece de las descripciones la forma de las determinadas porciones de la finca que constituyen la finca total que se reclama, o si ésta es rectangular o en forma de cuadrilatero, ni se trató de demostrar la forma de toda la propiedad. De ninguna de las inscripciones apareció la longitud de las líneas que forman los lados de las parcelas o de la finca que se reclama. Según toda la prueba demuestra, la finca en su totalidad puede extenderse indefinidamente hacia el este y estar toda situada al norte de la cerca colocada por los demandados.

Existe además alguna dificultad con respecto al lindero del oeste de la finca que se alega que los demandados retienen. Expresan los demandantes que tienen al oeste a Gregorio Pastoriza, pero este último al declarar como testigo hizo manifestaciones de gran consideración, con las que trató de demostrar que ninguna parte de su finca se encontraba al oeste de la porción que se alega fué despojada a los demandantes y que su finca se encuentra solamente al oeste de los terrenos de los cuales estaban todavía en posesión los demandantes. Los demandantes no determinaron clara y terminantemente el lindero del oeste y si Gregorio Pastoriza es la colindancia del oeste, los terrenos de los demandantes no pueden extenderse hasta el sur según ellos alegan.

Además, los demandantes poco o nada han ofrecido para probar el número de cuerdas que en realidad les queda aún y que están al norte de la palizada. De una mensura o examen podría conocerse el número exacto de cuerdas de terreno que quedan así como sus actuales colindancias. Sin tal prueba no puede quedar excluída la suposición de que los terre-

nos de los demandantes pudieran tener una amplia extensión hacia el este.

Según ya hemos indicado se presentó prueba con la que se trató de demostrar que los demandantes estaban en posesión por lo menos de una parte del terreno que reclaman. Si hubieran establecido oportunamente una acción posesoria es posible que hubieran alcanzado algún éxito, pero en un pleito sobre reivindicación como éste, el demandante está obligado a determinar de modo preciso el terreno que reclama y luego presentar su prueba para establecer su título. Entendemos que el demandante dejó de cumplir con este requisito, por lo que no puede ponérsele en posesión de la finca que reclama.

La sentencia debe confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.