EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO ROJAS NEGRÓN, demandado y apelante.

Núm. 7144.—*Sometido:* Abril 28, 1937. *Resuelto:* Abril 22, 1938.

*Joaquín Vendrell,* abogado del apelante; *Hon. Procurador General B. Fernández García* y *E. Campos del Toro, Procurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

En la demanda se alega que desde mayo 10 de 1927 el demandado Antonio Rojas Negrón se halla poseyendo sin justo título, de mala fe, y sin el consentimiento del demandante, El Pueblo de Puerto Rico, cierto predio de terreno de 120 cuerdas de la propiedad de este último; que el demandante es dueño en pleno dominio del referido predio por cesión que le hiciera el Gobierno de los Estados Unidos de América por ley de julio 1 de 1902; que el Gobierno de los Estados Unidos de América adquirió dicho predio por cesión que le hiciera la Corona de España en el año 1898, en el Tratado de París; y que la Corona de España lo adquirió a su vez por descubrimiento en el año 1493, y por ocupación desde tiempo inmemorial.

Se alega además, que en el año 1926 un tal José Rodríguez Cos promovió un expediente posesorio ante la Corte Municipal de San Lorenzo alegando falsamente estar en posesión del referido predio desde el año 1923, en concepto de dueño, quieta, pública y pacíficamente y sin interrupción alguna; que la corte, oída la información promovida, dictó resolución en octubre 30 de 1926, la que fué enmendada por otra de noviembre del mismo año, aprobando el expediente y ordenando al Registrador de la Propiedad de Caguas que procediese a inscribir la posesión del referido predio a nombre del promovente sin perjuicio de terceros; que el registrador aludido así lo hizo en diciembre 10, 1926; que en 10 de mayo de 1927 el susodicho José Rodríguez Cos vendió el predio al ahora demandado Antonio Rojas Negrón mediante escritura

que fué inscrita en el Registro de la Propiedad de Caguas al folio 237 del tomo 37 de San Lorenzo.

Y se alega por último, que el demandado entró en posesión, y comenzó a disfrutar ilegalmente del referido predio sin justo título, de mala fe y sin el consentimiento del demandante, a pesar de tener conocimiento de que el mismo es propiedad pública; que continúa disfrutando y poseyendo el predio, habiendo obtenido frutos y beneficios del mismo que el demandante calcula en la suma de $300.

Termina el demandante solicitando que se declare el referido predio como de su propiedad y se le ponga en posesión del mismo; que se declare la nulidad del expediente posesorio tramitado por José Rodríguez Cos, de la inscripción de la posesión del predio hecha en el Registro de la Propiedad de Caguas a nombre del referido promovente de la información posesoria, así como de la subsiguiente inscripción realizada en el mismo Registro a favor del ahora demandado, en virtud del traspaso realizado por José Rodríguez Cos a favor de éste; que se condene al demandado a pagar al demandante la suma de $300 por concepto de frutos, rentas y utilidades derivadas por dicha parte del predio; y que se condene al demandado además a pagar las costas del presente litigio.

En su contestación el demandado niega los hechos esenciales de la demanda y como materia de defensa alega, que allá por los años de 1880 a 1882, Esteban Rosario, vecino que fué del barrio del "Espino," de San Lorenzo, adquirió la finca en controversia por compraventa realizada en la forma siguiente: sesenta cuerdas a Eduardo Rodríguez, vecino que fué también de San Lorenzo y quien la venía disfrutando con anterioridad al año 1882 a título de dueño y de buena fe, y sesenta cuerdas por compra a Evaristo Tirado, quien la adquirió a su vez por compra a Pedro Carrasquillo; que Esteban Rosario estuvo poseyendo dicha finca, de buena fe, con justo título, quieta, pública, pacíficamente y sin interrupción alguna desde el 1880 hasta el 1907 en que ocurrió su fallecimiento, y que desde el 1907 hasta el 1923 continuó en posesión de

la misma también en concepto de dueño, quieta, pública, pacíficamente y sin interrupción alguna, la sucesión de Esteban Rosario; que a consecuencia de no haber pagado la sucesión mencionada el importe de las contribuciones impuestas sobre la finca, el Colector de Rentas Internas de San Lorenzo, embargó la referida finca y anunció su venta en pública subasta, la que se llevó a efecto el día 12 de julio de 1923, habiéndose adjudicado la finca a José Rodríguez Cos por la suma de $17.30, por haber sido la mejor oferta que se obtuvo en el acto de la subasta, según certificado de compra de bienes inmuebles expedido por el mismo Colector de Rentas Internas de San Lorenzo a favor de José Rodríguez Cos con fecha 31 de diciembre de 1923; que el procedimiento de apremio para el cobro de contribuciones fué llevado a efecto por El Pueblo de Puerto Rico representado por el Colector de Rentas Internas de San Lorenzo quien en aquella fecha era un funcionario del Pueblo de Puerto Rico autorizado legalmente para llevar a efecto a nombre y en representación de El Pueblo de Puerto Rico la subasta y venta de la finca mencionada; que computado el tiempo de posesión del demandado con el de los anteriores dueños de la finca, han transcurrido más de cuarenta años de posesión quieta, pacífica y públicamente y sin interrupción alguna hasta la fecha de la interposición de esta demanda. Y como defensa especial se alega que la acción del demandante ha prescrito de conformidad con lo que determinan los artículos 1833 y 1860 del Código Civil vigente.

La Corte de Distrito de Humacao dictó sentencia declarando con lugar la demanda en cuanto a la primera y segunda causas de acción. El demandado apeló de dicha sentencia.

El apelante sostiene que la Corte de Distrito de Humacao erró al declarar que el apelado, El Pueblo de Puerto Rico, probó su justo título de dominio, e identificó la finca que reclama.

Para que prospere una acción reivindicatoria el demandante tiene que probar el justo título de dominio y señalar bien, definir, identificar la finca que reclama; 3 Manresa,

pág. 30 (2a. ed.); *Merle* v. *Ramos,* 31 D.P.R. 109; *Pesquera* v. *Fernández,* 22 D.P.R. 53, 54; *Rivera* v. *Castro,* 20 D.P.R. 496; *Martínez* v. *Delgado,* 18 D.P.R. 390; *Siragusa* v. *El Pueblo,* 18 D.P.R. 595; *Díaz* v. *El Pueblo,* 17 D.P.R. 60; *Sucesión Gorbea* v. *Pérez,* 10 D.P.R. 460; *Molfulleda v. Ramos,* 10 D.P.R. 314; *Verges et al.* v. *Pietri et al.,* 9 D.P.R. 20; *Enmanuel* v. *El Pueblo,* 7 D.P.R. 221; *Mouriño* v. *Carreras,* 2 S.P.R. 581.

La identificación que se exige al demandante consiste en demostrar que la finca que reclama es la misma a que se refieren los documentos que dicha parte presente en evidencia para acreditar su justo título de dominio; *Mouriño* v. *Carreras,* supra; y que se halla en la posesión de la parte demandada. *Sucn. Gorbea* v. *Pérez,* 10 D.P.R. 460; *Velilla* v. *Pizá,* 17 D.P.R. 1112; *Rosso* v. *Rosso,* 23 D.P.R. 131; *Vega et al.* v. *Rodríguez,* 21 D.P.R. 334.

Para acreditar su justo título de dominio el demandante presentó dos certificaciones expedidas por el Comisionado del Interior de Puerto Rico. En la primera de éstas aparecen transcritas ciertas constancias existentes en los archivos de dicho Departamento en relación con ciertos terrenos baldíos cubiertos de monte casi en su totalidad, inventariados con vista de los antecedentes existentes en los archivos de la Secretaría Civil en marzo del año 1900. La referida certificación dice así:

"El Comisionado del Interior del Gobierno de Puerto Rico CERTIFICA: Que en el expediente Núm. 10 de los archivos de este Departamento, titulado 'Inventario de los montes públicos y terrenos baldíos propiedad del Estado existentes en la isla, formado con vista de los inventarios y antecedentes que han podido encontrarse en los archivos de la Secretaría Civil, Marzo de 1900', el cual pertenece al legajo denominado 'Asuntos Generales, Índices e Inventarios,' de los archivos de este Departamento, a los folios que más adelante se dirán obran los asientos que copiados literalmente dicen así:

"Folio 4: Cayey.—Denominación: MONTE SANTANA.—Situación. —Barrio de Guabate.—Límite—N. el barrio de Culebras de Caguas— E. el río de Guabate—S. propiedades particulares de Cayey y O. los

barrios de Beatriz de Caguas y Cayey.—Cabida—500.75 cuerdas—Observaciones—Toma de posesión—14 Febrero, 1879. Monte Alto.—Denominación: CUCHILLA DEL PELADO Y DE LA VACA MUERTA.—Situación— Barrio de Farayón.—Límites—Desconocidos.—Cabida—se ignora.—Observaciones. El monte conocido con este nombre se extiende por las jurisdicciones de Guayama, Patillas y Caguas.

"Folio 10: Guayama.—Denominación: ORIENTE.—Situación—Carite.—Límites—No pueden fijarse detalladamente hasta practicar el deslinde.—Cabida 1,017 cuerdas.—Observaciones—Toma de posesión Julio 16, 1877.—Denominación: CUCHILLA DEL PELADO, DE LA VACA MUERTA, SANTANA Y OTROS.—Situación—Barrio de Carite. Límites desconocidos. Cabida.—Ignórase. Observaciones—Según antecedentes la citada cuchilla linda con el barrio de Mulas en Patillas, con el de Farayón en Cayey y con el de Beatriz en Caguas; siendo su calidad inferior.

"Folio 3: Caguas.—Denominación: CUCHILLA DEL PELADO Y DE LA VACA MUERTA.—Situación—Barrio de Beatriz.—Límites, desconocidos.—Cabida—se desconoce.—Observaciones. Este monte se extiende por las jurisdicciones de Guayama, Patillas, Cayey y Hato Grande, en cuyos puntos es conocido con la citada denominación de CUCHILLA DEL PELADO Y DE LA VACA MUERTA.

"Folio 17: Patillas. Denominación—CUCHILLA DEL PELADO Y DE LA VACA MUERTA. Situación. Barrio de Mulas. Límites. La cuchilla conocida con este nombre se extiende por las jurisdicciones de Guayama, Cayey, Caguas y Hato Grande. Cabida. Desconócese.

En la segunda de dichas certificaciones aparece transcrita una solicitud de varios vecinos del municipio de Caguas para que les concedieran terrenos baldíos sitos en el barrio del Espino de la jurisdicción de Hato Grande, hoy San Lorenzo, y aparece transcrita además el acta en la cual se narra el acto de la incautación y deslinde de dichos terrenos. La referida certificación lee como sigue:

"El Comisionado del Interior del Gobierno de Puerto Rico CERTIFICA: Que en los archivos de la división de Terrenos Públicos de este Departamento a su cargo, obra el expediente marcado con el número 33 de la sección de Hato Grande, titulado: 'Gobierno General de la Isla de Puerto Rico—Negociado de Obras Públicas, Construcciones Civiles, Montes y Minas—Número del Registro 2090—Terrenos—Hato Grande—Expediente promovido por varios vecinos de Caguas en de-

manda de que se les concedan unos terrenos de la jurisdicción de Hato Grande sitos en el barrio del Espino y declaran en estado de deslinde de dichos terrs.—Empieza en 14 de julio de 1883—Concluye en 12 de diciembre de 1885,' en el que a los folios 38 y 39, obra el documento que copiado literalmente dice así:

" 'Hay un membrete que dice: Cuerpo Nacional de Ingenieros de Montes. Inspección de Puerto Rico. Oficio As. 1884 y 85 C. de Peso N. 1,896,401.—En el barrio del Espino, de la jurisdicción de Hato Grande, a los veinte y un días del mes de noviembre del año de mil ochocientos ochenta y cinco, se procedió por el Ayudante de Montes don Ramón García Sáenz, asistido del Montero de la Segunda Comarca don Lope Marinero Cardenal, en virtud de orden del Sr. Inge. Jefe de la incautación, en nombre del Estado, de los terrenos que en el expresado barrio y jurisdicción fueron solicitados como baldíos por don Juan Claudio Pérez, Manuel Corujo y Fernán Correa.—Dichos terrenos, cuya superficie aproximada podrá ser como de unas seiscientas cuerdas, lindan al Norte con la cuchilla divisoria de las jurisdicciones de Patillas y Guayama, al Este propiedad de don Pedro Rodríguez Calisto y al Oeste jurisdicciones de Guayama y Caguas; se encuentran casi en su totalidad cubiertos de monte siendo las especies dominantes que la pueblan el tabonuco y nuez moscada y como subordinadas, negralora, guaraguao, palma de sierra, camacey, palo blanco y otras.—Dentro del terreno objeto de la incautación se encuentran unas pequeñas talas hechas, según se averiguó, por Juan de la Cruz el que no pudo ser habido por cuya causa no pudo averiguarse en virtud de qué título lo verifica. En el acto de la incautación que se llevó a cabo a presencia del comisario del barrio D. Romualdo Rodríguez, del colindante D. Pedro Rodríguez y de su hijo D. Eduardo Rodríguez, se prohibió por el señor Ayudante todo uso y aprovechamiento del terreno objeto de la incautación llevada a cabo en nombre del Estado. Y para que conste y obre los efectos oportunos, se extiende la presente acta que firman con el Sr. Ayudante los concurrentes al acto, excepto don Pedro Rodríguez por imposibilidad física, haciéndolo a su ruego su hijo D. Eduardo fecha *ut supra*. Ramón García Sáenz—Lope Marinero Cardenal. Romualdo Rodríguez: Eduardo Rodríguez: a ruego de mi padre D. Pedro—Eduardo Rodríguez. Es copia—Guillerna—Hay un sello que dice:· Inspección de Montes de Puerto Rico.' "

Como apuntamos anteriormente, El Pueblo de Puerto Rico, en su calidad de demandante en la presente acción reivindica-

toria, tenía la obligación de conectar la finca que describe en su demanda con las fincas que constan en las dos certificaciones transcritas, en forma tal que demostrara que la primera está comprendida dentro de las segundas. Para llevar a cabo dicha identificación el demandante presentó evidencia testifical. Dicha evidencia consistió en las declaraciones del ingeniero y agrimensor Armando Morales Cano, y del agrimensor José Castro Martínez. Ambos manifestaron haber trabajado en el año 1923 en el deslinde de los terrenos descritos en las dos certificaciones transcritas, y afirmaron, sobre la base de la mensura e investigación por ellos realizada en aquella ocasión, que la finca descrita en la demanda está comprendida dentro de los montes ''De la Vaca Muerta'' y ''La Cuchilla del Pelado,'' allí descritos.

Armando Morales Cano declaró entre otras cosas que es ingeniero civil y desempeña el cargo de agrimensor en la División de Terrenos Públicos del Departamento del Interior, desde hace veinticuatro años; que ha examinado los montes del Pueblo de Puerto Rico en distintas jurisdicciones de la Isla; que en el 1923 procedió al deslinde de montes públicos en las jurisdicciones de San Lorenzo, Cayey, Caguas, Patillas y Guayama, inclusive el barrio ''Espino'' de San Lorenzo; que después de citar a los ocupantes de dichos terrenos y de exigirles que presentaran los documentos que les autorizara a ocupar dichos terrenos, procedió a la mensura; que el objeto de mensurar las propiedades fué para que se acogieran a la Ley de Hogares Seguros; ''que casi la totalidad del terreno de las ciento veinte cuerdas estaba cubierto de bosques y había algunas porciones a la orilla del río que estaban cultivadas''; que el testigo y los que le acompañaban al hacer la mensura tomaron posesión a nombre de El Pueblo de Puerto Rico de las ciento veinte cuerdas y llevaron a los ocupantes un impreso para que se acogieran a la Ley de Hogares Seguros, notificándoles que esos terrenos eran propiedad del Estado.

La parte de la declaración de este testigo en que conecta la finca descrita en la demanda con los montes descritos en los referidos documentos, aparece narrada en la exposición del caso en la forma siguiente:

"P. Testigo, le muestro un documento marcado como *Exhibit* Núm. 1 del demandante en que aparece que el Pueblo de Puerto Rico es dueño de ciertos 'montes públicos y terrenos baldíos.' Yo deseo que teniendo como base la investigación y mensura que usted hizo, me diga si esas ciento veinte cuerdas se encuentran dentro de los terrenos que aparecen en esa certificación."

Hecha oposición por el apelante, el testigo contesta "que examinó el documento, que la finca ésa se encuentra en el monte denominado de la 'Vaca Muerta' según la descripción que aparece ahí por la cuchilla que determina la jurisdicción de Caguas y San Lorenzo y de Cayey y Guayama."

"P. Testigo, le muestro ahora el *Exhibit* Núm. 2 del demandante donde aparece una incautación hecha por los ingenieros de Montes, hecha por el gobierno español de ciertos terrenos en el barrio del 'Espino' de la jurisdicción de Hato Grande. Yo deseo que de acuerdo con la investigación que usted hizo y la mensura, me diga, si de acuerdo con eso, la finca objeto de este litigio se encuentra incluída en o dentro del límite de los terrenos que fueron incautados.

"R. Sí, señor, en la descripción de este monte que aparece aquí en la certificación."

José Castro Martínez declaró que es agrimensor y desempeña ese cargo en la División de Terrenos Públicos en el Departamento del Interior de Puerto Rico hace como catorce años; que ha tenido que hacer algunas mensuras en el centro de la Isla, en Caguas, Cayey, San Lorenzo y Patillas; que en el barrio "Espino" ha hecho mensuras en sitios que se denominan "La Macanea" y "Quebrada Lajas"; que fueron ordenados por el Comisionado del Interior para deslindar esa zona allá por el mes de febrero de 1923; que salieron cuatro brigadas, una mandada por Armando Morales Cano, otra por Eduardo Castro Martínez, otra por un tal Sabás Honoré, y otra por el testigo; que el objeto del trabajo era deslindar

los montes del Estado; que estuvo en esa zona entre el Espino y Patillas por espacio de cuatro años; que esa finca queda comprendida dentro del monte del Estado; que el terreno de esa finca era de montes y malezas gruesas; que los terrenos los dejaron después de mensurados bajo la custodia de los guardabosques y que ellos los entregaron a Hogares Seguros para que los custodiaran; que el testigo encontró en las ciento veinte cuerdas a un tal Evangelista Claudio; que no pudo precisar el terreno que ocupaba Evangelista Claudio, pero que el testigo le dijo a Evangelista Claudio que ese terreno que ocupaba era considerado como monte del Estado y que si quería podía acogerse a la Ley de Hogares Seguros y que Evangelista Claudio le firmó unas solicitudes en presencia del testigo después de haberlas jurado ante el juez de San Lorenzo; que además de haber encontrado en la finca a Evangelista Claudio, estaba allí Isabel Claudio; que Isabel Claudio ocupaba una pequeña parte de la finca; que le requirió para que mostrara títulos; que le hizo saber que esos terrenos eran de El Pueblo de Puerto Rico; que Isabel Claudio se acogió a la Ley de Hogares Seguros.

Bastan en nuestra opinión las declaraciones de estos peritos para demostrar claramente que la finca que se reclama está comprendida dentro de las fincas que constan en las dos certificaciones presentadas por el demandante para acreditar su justo título de dominio.

El demandante quedó relevado de la obligación de probar el otro elemento necesario para la identificación de la finca, o sea que la finca descrita en la demanda está en la posesión del demandado, toda vez que este último expresamente admitió ese hecho en su contestación.

También surge claramente tanto de las certificaciones transcritas como de las declaraciones de los dos peritos a que hemos hecho referencia, que la finca reclamada por el demandante forma parte de una porción de terrenos baldíos cubiertos casi en su totalidad de montes y malezas gruesas y sólo hay algunos pedazos de terrenos cultivados. Atendida

pues la naturaleza de las tierras que forman la parcela en litigio es necesario concluir que el dominio de dicha parcela correspondía al Estado.

Como bien dice el apelante, es de conocimiento judicial que la Isla de Puerto Rico fué descubierta en el año 1493 a nombre de y para la Corona de España, y que originalmente la totalidad territorial de la misma pertenecía al Rey, pasando gradualmente a la propiedad particular parte de ella por concesiones onerosas o gratuitas hechas directamente por el Gobierno Central, por título de amparo concedido por la Junta de Terrenos Baldíos y Realengos y mediante posesión adversa extintiva del derecho dominical.

Por virtud del artículo VIII del Tratado de París (30 Stat. at Large p. 1754, Compilación 1911, 6593–6610), España cedió a los Estados Unidos de América todos los edificios, muelles, cuarteles, fortalezas, establecimientos, vías públicas, y demás bienes inmuebles que con arreglo a derecho eran del dominio público y como tal correspondían a la Corona de España.

En julio 1°. de 1902 el Congreso de los Estados Unidos aprobó una ley autorizando al Presidente para reservar terrenos y edificios públicos pertenecientes a los Estados Unidos en la Isla de Puerto Rico para ciertos usos públicos y para conceder los terrenos y edificios públicos no reservados, con exclusión de los puertos, ríos navegables, extensiones de agua y el lecho de los mismos, al Gobierno de Puerto Rico (32 Stat. at Large, Part I, Chap. 1383, p. 731). En cumplimiento de dicha ley y por medio de varias proclamas, el Presidente reservó ciertos terrenos y edificios, entre los cuales no se encuentran los montes públicos.

Probada, pues, la naturaleza de la finca, es evidente que el título de la misma es del demandante, El Pueblo de Puerto Rico, y que procede la reivindicación solicitada a menos que el demandado demuestre que dicha finca ha pasado a ser de dominio particular en virtud de uno de los medios reconocidos en derecho. *El Pueblo* v. *Dimas*, 18 D.P.R. 1061, 1074.

El demandado no ha presentado evidencia tendiente a probar que él o sus antecesores hayan adquirido título sobre el predio en litigio en virtud de concesión gratuita u onerosa hecha por la Corona de España, el Gobierno de los Estados Unidos o el Gobierno de Puerto Rico, sino que presentó evidencia que probó que la adquisición ocurrió en la forma siguiente:

Esteban Rosario adquirió 50 de las 120 cuerdas de que consiste la finca, por compraventa de Pedro Rodríguez Calexto; 60 cuerdas, por compraventa de un tal Eduardo Rodríguez, quien a su vez las había heredado de su padre el mencionado Pedro Rodríguez Calexto; y las restantes 10 cuerdas, por compraventa de un tal Prudencio Montañez.

Esteban Rosario declaró la finca en cuestión en el año 1901 para los fines de contribución sobre la propiedad para dicho año fiscal. La finca siguió figurando en los records de Tesorería Insular para tales fines a nombre del referido Esteban Rosario hasta el año 1907–08. A la muerte de Esteban Rosario la finca pasó a su sucesión, a nombre de la cual aparece registrada para los mencionados fines contributivos hasta el año fiscal de 1926–27.

En procedimiento de apremio seguido por el Colector de Rentas Internas de San Lorenzo contra la Sucesión de Esteban Rosario, la finca fué puesta en pública subasta y después de notificados los miembros de la sucesión, adjudicada a José Rodríguez Cos por la suma de $17.30.

En mayo 4 de 1925 Rodríguez Cos inició ante la Corte de Distrito de Humacao un procedimiento de información de dominio solicitando que se ordenara además la inscripción de la finca en cuestión en el registro de la propiedad a nombre del promovente y su esposa. El archivo y sobreseimiento de este recurso fué decretado por falta de instancia o abandono.

En octubre 22 de 1929 Rodríguez Cos promovió una información posesoria ante la Corte Municipal de San Lorenzo. El expediente fué finalmente aprobado y se ordenó al Registrador

de la Propiedad de Caguas inscribir la posesión material de la finca en cuestión a favor del mencionado promovente, sin perjuicio de tercero de mejor derecho.

Posteriormente, Rodríguez Cos vendió la finca al demandado Antonio Rojas Negrón, quien la está poseyendo en la actualidad.

Como puede verse por lo expuesto, el demandado no ha probado que la finca reclamada haya pasado del dominio público al dominio privado mediante uno de los medios reconocidos en derecho, o sea un traspaso válido, gratuito u oneroso de la Corona de España o el Gobierno de los Estados Unidos, durante el respectivo período durante el cual fueron dueños de la misma, o del Gobierno de Puerto Rico después del año 1902, a favor de una persona particular. Siendo esto así, la Corte de Distrito de Humacao no erró al aplicar los artículos quinto y sexto de nuestro Código Político y el artículo primero del Reglamento para la Composición de Terrenos Realengos de Puerto Rico, los cuales dicen así:

"Artículo 5.—El derecho primitivo y final a todos los bienes inmuebles y muebles, dentro de los límites del territorio de Puerto Rico, y no pertenecientes a los Estados Unidos, reside en el pueblo de dicho territorio.

"Artículo 6.—Siempre que el título a cualquiera propiedad caducare por falta de herederos o parientes próximos, vuelve éste por reversión al Pueblo de Puerto Rico. Toda propiedad dentro de los límites de Puerto Rico, no perteneciente a persona alguna, pertenece al Pueblo de Puerto Rico.

"Artículo 1 (Reglamento para la Composición de Terrenos Realengos en Puerto Rico).—Se considerarán como realengos, para los efectos de este Reglamento y con arreglo a la ley 14, título 12, libro cuarto de la Recopilación de Indias, todos los terrenos baldíos, suelos y tierras que no tengan dueño particular legítimo, o lo que es lo mismo, que no hayan pasado nunca al dominio privado, en virtud de concesión gratuita u onerosa por parte de las autoridades competentes."

Tampoco cometió error la Corte de Distrito de Humacao al declarar que la evidencia aportada por el demandado

en el presente caso para acreditar su título de dominio sobre la finca en litigio es confusa, contradictoria, e insuficiente para destruir el título que El Pueblo de Puerto Rico estableció a su favor.

El demandado no pretende haber adquirido la finca en litigio en virtud de una concesión gratuita u onerosa de las autoridades competentes, sino en virtud de adjudicación en un procedimiento de apremio llevado a efecto en cobro de las contribuciones sobre dicha propiedad adeudadas por la Sucesión de Esteban Rosario, a nombre de la cual aparecía dicha finca declarada en Tesorería Insular para los fines de dicha contribución.

Como quiera que los terrenos de la propiedad de El Pueblo de Puerto Rico están exentos del pago de cualquier contribución, la venta de tales terrenos por falta de pago de contribuciones es nula de toda nulidad, y no confiere título alguno al comprador o adjudicatorio. Ésta es la regla que impera en las jurisdicciones norteamericanas.

En 61 Corpus Juris, sección 1801, pág. 1295, se dice:

"Desde el momento en que una propiedad perteneciente a los Estados Unidos o a un Estado no está sujeta al pago de contribuciones, una venta de esa propiedad por falta de pago de contribuciones, siendo nula e ineficaz, no transfiere título alguno al comprador. La misma regla es aplicable a la venta de tierras exentas de contribuciones por contrato o concesión legislativa. Pero una persona particular puede tener un título incipiente (*inchoate*) o equitativo sobre tierras, el título de dominio sobre las cuales pertenece al público, y ese interés puede estar sujeto al pago de contribuciones y puede trasmitirse al comprador por venta en subasta por falta de pago de los impuestos."

Otros párrafos pertinentes de la Enciclopedia mencionada son los siguientes:

"Ordinariamente un comprador en una venta por contribuciones cae dentro de la regla de *caveat emptor*, y no es un comprador de buena fe y sin aviso, toda vez que los procedimientos para el cobro de contribuciones son asuntos constantes en los records públicos, a

los cuales los presuntos compradores tienen acceso, pudiendo imputárseles conocimiento de los defectos que aparecen de los records. Dicho comprador debe darse por avisado de todos los defectos jurisdiccionales, y en cuanto a ellos no puede decirse que sea un comprador de buena fe. Cuando los procedimientos se basan en la sentencia de una corte, el tal comprador puede generalmente confiar en ella para su protección; pero está expuesto a ser despojado de su título mediante la cancelación o anulación de la subasta por causa, con tal que se le dé aviso del procedimiento. El comprador de un inmueble en una subasta por contribuciones no tiene derecho a ser protegido como un comprador inocente cuando él ha comprado por un precio excesivamente inadecuado; . . .'' (61 C. J. pág. 1321, sec. 1847.)

De lo expuesto aparece, pues, claramente que el comprador o adjudicatario en un procedimiento de apremio de terrenos que luego resultan ser de la propiedad de El Pueblo de Puerto Rico, no adquiere título de clase alguna sobre los mencionados terrenos. Asimismo cualquier persona que adquiera dichos terrenos del comprador o adjudicatario, tampoco adquiere título de clase alguna.

Véase 61 C. J., sección 1858, página 1327, donde se dice:

"Aun antes de la expiración del término fijado para la redención, el comprador en la subasta por contribuciones puede traspasar su interés en cualquier forma distinta a la cesión del certificado de venta. Después de ese término, él puede disponer de ese interés como de cualquier otro título a favor de cualquier cesionario; pero la naturaleza del título no se cambia por tal traspaso; por consiguiente, el cesionario debe estar generalmente preparado para sostener su validez, lo mismo que si fuera el comprador original; y si el comprador en la subasta no adquirió título alguno, él no puede traspasar título alguno a su cesionario.''

En el presente caso el Colector de Rentas Internas de San Lorenzo adjudicó la finca en litigio en un procedimiento de apremio seguido contra la Sucesión de Esteban Rosario, a José Rodríguez Cos. Rodríguez Cos obtuvo un expediente posesorio logrando así inscribir en el Registro de la Propiedad de Caguas, a su nombre y sin perjuicio de tercero,

la posesión material de la finca. Antes de que tal posesión material se haya convertido en dominio, Rodríguez Cos vendió la finca en cuestión a Rojas Negrón. El Pueblo de Puerto Rico reclama en la presente acción reivindicatoria el título y el dominio sobre la finca, y ha probado satisfactoriamente no haber cedido ese dominio en manera alguna. Bajo tales circunstancias, la corte inferior no erró al declarar que la evidencia aportada al juicio por la parte demandada en cuanto a su título, es insuficiente para derrotar el título acreditado por El Pueblo de Puerto Rico a su favor.

■■ Tomando en consideración los hechos probados, no es difícil llegar a la conclusión de que al efectuarse en la isla el cambio de soberanía, no se había consolidado en el apelante el dominio sobre el inmueble reclamado en la demanda. En otras palabras, en aquella fecha el apelante no podía ostentar un título ganado a virtud de posesión durante treinta años o más. Si el cambio de soberanía tuvo, como es natural, el efecto de interrumpir el período prescriptivo hasta entonces ganado por el apelante, y si a partir de 1898 la prescripción adquisitiva, de acuerdo con lo resuelto por este Tribunal en *El Pueblo* v. *Dimas et al.*, 18 D.P.R. 1061, no puede alegarse en contra de El Pueblo de Puerto Rico, es irremisible convenir con la corte inferior que no estaba prescrita la acción del apelado.

*Se confirma la sentencia apelada.*

El Juez Asociado Señor Wolf disintió. *