# 96 DTA 104

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE PONCE Y AIBONITO
### PANEL I

EL PUEBLO DE PUERTO RICO
Apelado

v.

JOSE LUIS MARTINEZ RODRIGUEZ
Apelante

Núm. KLAN-95-01072

San Juan, Puerto Rico, a 1 de agosto de 1996

Panel integrado por su Presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El apelante fue acusado, juzgado y convicto por el delito de Exposiciones Deshonestas. El Ministerio Público le imputó que para el 12 de febrero de 1994 voluntariamente expuso las partes íntimas de su cuerpo en el área de la marquesina de su residencia que es un área abierta a la calle y en presencia de la señora Mary Frances Borrero Juliá, su vecina, a quien ofendió y molestó la conducta del apelante quien se mantuvo completamente desnudo y mirando hacia la señora Borrero en actitud sarcástica y ofensiva.

El tribunal sentenciador le impuso una multa de doscientos cincuenta dólares ($250.00) más las costas del proceso. No conforme con la sentencia condenatoria acude ante nos imputándole al Tribunal de Primera Instancia, Sub-Sección de Distrito, Sala de Yauco, la comisión de tres errores. En su alegato el apelante desiste de discutir dos de los señalamientos de errores y nos plantea el siguiente único señalamiento de error:

*"Erró el Tribunal de Distrito de Puerto Rico, Sala de Yauco (Honorable Arnaldo J. Irizarry, Juez) al encontrar culpable y convicto al acusado, José Luis Martínez Rodríguez e imponerle una multa de doscientos cincuenta ($250.00) dólares más las costas, a pesar de que la prueba desfilada no estableció más allá de duda razonable y fundada su culpabilidad."*

El apelante sostiene que la prueba de cargo fue inconsistente, conflictiva y contradictoria y que de la misma surge la duda razonable y fundada que impedía que el acusado fuera declarado culpable del delito imputádole, por lo cual no se destruyó la presunción de inocencia que le asiste por mandato constitucional. El planteamiento del apelante es muy frágil y se desmorona ante el resumen del testimonio de la perjudicada que él reseña a las páginas 4 y 5 de su alegato. Veamos:

*"En el directo ella declara que el día 12 de febrero de 1994 en horas de la mañana ésta llega a su casa en la calle Híbrido Nacional, Núm. R- 35, Urb. El Cafetal, Yauco, Puerto Rico. Que vive allí hace más de un año cuatro meses. Que el aquí apelante es su vecino de la casa del frente. Que entre la casa de ésta y la del apelante los divide una calle de la urbanización. Que el apelante vivía allí antes de que ella se mudara. Señala la testigo que ese día llega a su casa en unión de sus dos hijos, uno de tres años el otro de cuatro meses de edad. Estacionó el carro en la marquesina de la casa y bajó al menor de cuatro meses y lo entró a su residencia por la puerta de la cocina, la cual da a la marquesina. Que luego salió a decirle a su otro hijo (el de tres años) que entrara a la casa y al mirar para la casa del frente vio al aquí apelante completamente desnudo en la marquesina de la casa de él a plena luz del día. Que la puerta de la marquesina de la casa del aquí apelante estaba cerrada. Que al ella verlo desnudo salió corriendo y se lo dijo a otro vecino que vive también al frente de ella, el cual de apodo le dicen "Chan" y cuyo verdadero nombre es José Gómez Ortiz.*

*Que al ésta llegar a casa de "Chan", José Gómez Ortiz, procedió a decirle a la esposa de éste, Miriam, que ese hombre salió desnudo otra vez, que Miriam la cogió, la sentó, la calmó y le preguntó por su otro bebé y ella le dijo que estaba en la casa."*

La referida testigo a preguntas del fiscal declaró que al ver al apelante desnudo se sintió mal porque ella merece respeto. En la página 10 de la Transcripción la testigo declara que el apelante en dos ocasiones previas se había sacado el miembro (refiriéndose al pene) delante de ella.

En el contrainterrogatorio la testigo Mary Frances Borrero Juliá declara que antes de los hechos el aquí apelante le había enseñado su pene en dos ocasiones y que en ninguna de esas dos ocasiones ella había llamado la policía ni había salido corriendo para la casa de su vecino "Chan" a informárselo (E.N.P.,páginas 10 y 12), ni había llamado a la policía. En el contrainterrogatorio señaló que los hechos ocurrieron en una calle de urbanización rodeada de casa(sic) de familia y que los hechos ocurrieron un sábado a las 11:20 de la mañana.

Declara además que la casa del apelante no tiene rejas en la marquesina (E.N.P., página 22) y que éste salió totalmente desnudo a dicha marquesina a la hora y el día indicado cerrando a su vez la puerta de la marquesina de su casa. Que el apelante se encontraba cuidando a sus dos hijos ese día."

Los hechos reseñados por el propio apelante se acoplan perfectamente con los hechos alegados en la denuncia. Es evidente que el testimonio de la perjudicada fue creído más allá de duda razonable por el Tribunal de Primera Instancia.

# I

El Artículo 106 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4068, en lo pertinente, provee:

*"Toda persona que voluntariamente expusiere sus partes pudendas o cualquier otra parte íntima de su cuerpo en cualquier sitio en que se hallare presente otra persona, incluyendo agentes del orden público, a quien tal exposición pudiera ofender o molestar, será sancionada con pena de reclusión que no excederá de tres meses o multa que no excederá de doscientos cincuenta dólares."*

En su análisis editorial sobre este artículo la Doctora Dora Nevárez ▮ señala *"que se trata de un delito dirigido a proteger la sensibilidad y el pudor del público y evitar conducta que atente contra las normas de pudor y decencia que tiene la sociedad. Los elementos del delito son: la exposición voluntaria de una parte íntima del cuerpo del sujeto activo, en cualquier lugar donde estuviere presente otra persona que pudiere ofenderse o molestarse por tal acto."*

Expone la distinguida Profesora Nevárez *"que el delito de exposición deshonesta requiere que se realice intencionalmente por parte del acusado, lo cual habrá de inferirse de los hechos"*. Continúa comentando *"que no se necesita que el acto voluntario conlleve una intención maliciosa, ni premeditada y deliberada. Basta que se configure una intención general"*. Agrega que *"otro elemento del delito es que la exposición de la parte del cuerpo se haga estando presente por lo menos una persona quien pudiera ofenderse o molestarse por tal conducta. El criterio a utilizar es si la exposición de la parte pudenda se hace en unas circunstancias en que hay la posibilidad de que las personas que la han observado pudieran ofenderse o molestarse. No es necesario que en efecto se ofendan"*. ▮ Finalmente considera que *"la exposición deshonesta podría darse en un área privada si la misma puede ser observada desde un sitio público o desde otro sitio privado por personas que pudieren ofenderse o molestarse por tal conducta"*.

En el presente caso el Ministerio Público presentó prueba sobre todos los elementos del delito. Esa prueba es satisfactoria y suficiente en derecho para configurar el delito imputado. La parte perjudicada y principal testigo de cargo Mary Frances Borrero Juliá, declaró sobre hechos acaecidos en su inmediata presencia y percibidos por ella directamente. Ante el Tribunal de Primera Instancia desfiló prueba sobre todos los elementos del delito imputado. El apelante se expuso completamente desnudo en la marquesina de su casa, un lugar abierto y despejado sin portón de rejas, es decir, un sitio no protegido de ser visto. La perjudicada testificó que no era la primera vez que el apelante incurría en esa conducta, lo cual constituye prueba de que no estamos frente a un acto accidental o inadvertido, sino voluntario. La exposición del apelante desnudo provocó malestar y ofensa a la perjudicada quien, además, se puso nerviosa. El estado de ánimo de la perjudicada después del incidente fue corroborado con el testimonio de su vecino, el testigo Torres Ortiz. ▮

El Tribunal Supremo resolvió en el caso de *Pueblo v. Belmonte,* 26 D.P.R. 775 (1918), y bajo el Artículo 283 del Código Penal derogado, 33 L.P.R.A. sec. 1171, que:

*"Una vez demostrado que el acusado deliberadamente expuso sus partes pudendas en un sitio no perfectamente protegido de ser visto, y en defecto de la más mínima prueba de algún torpe motivo de parte de las personas que presenciaron la exposición deshonesta, la corte sentenciadora tiene el derecho de llegar a la conclusión de que ellas pudieron haber sido o efectivamente fueron ofendidas".*

Ciertamente al amparo de la Sección 11 del Artículo II de la Constitución del Estado Libre Asociado, 1 L.P.R.A. (1982), págs. 307-08 y la Regla 110 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110, se presume inocente al acusado y en caso de existir duda razonable acerca de su culpabilidad se le absolverá. Este principio cardinal impone al Ministerio Público la carga de probar la culpabilidad del acusado más allá de duda razonable. *Pueblo v. González,* **95 J.T.S. 86.** Sin embargo, ello no significa que a los fines de establecer la culpabilidad del acusado, el fiscal venga obligado a destruir toda duda especulativa o imaginaria y probar su caso con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, dirige la inteligencia y satisface

la razón. *Pueblo v. Rosario Reyes,* **95 J.T.S. 74** (1995); *Pueblo v. Bigio Santana,* 116 D.P.R. 748 (1985); *Pueblo v. Pagán Santiago,* **92 J.T.S. 56** (1992).

En su alegato, el apelante, en términos generales, vagos e imprecisos, describe la prueba de cargo como inconsistente, contradictoria, conflictiva e increíble, sin ofrecer detalles ni pormenorizar sobre esas alegadas contradicciones, conflictos e inverosimilitudes. A nuestro juicio, el señalamiento principal del apelante va dirigido, no a cuestionar la suficiencia de la prueba sino a impugnar la credibilidad que le mereció al tribunal de instancia dicha prueba, especialmente el testimonio de la perjudicada.

Una atenta lectura a la exposición narrativa de la prueba --no empece las contradicciones de segunda monta en la prueba testifical-- produce en el ánimo del lector la ausencia de duda sobre la culpabilidad del apelante. Agréguese a lo dicho que el Tribunal de Primera Instancia tuvo la oportunidad de ver y escuchar a los testigos mientras declaraban y pudo apreciar, percibir y evaluar, mejor que nosotros, su conducta en la silla testifical. Es asunto trillado en nuestra jurisprudencia que a no ser que se demuestre que el tribunal sentenciador actuó movido por pasión, prejuicio o parcialidad o que la prueba es improbable e increíble, no debemos interferir con el dictamen de instancia. Tampoco se nos ha demostrado que el fallo apelado no constituya el balance más racional y justiciero de la prueba.

Es norma firmemente establecida por nuestro Tribunal Supremo que la evidencia directa que ofrezca un testigo que merezca entero crédito al juzgador será prueba suficiente de cualquier hecho. Prueba suficiente es aquella que produce certeza o convicción moral en un ánimo no prevenido. Regla 10(c) de Evidencia, 32 L.P.R.A. Ap. I, R. 10(c), *Pueblo v. Cabán Torres,* 117 D.P.R. 645 (1986); *Pueblo v. Rodríguez Román,* ___ D.P.R. ___ (1991), **91 J.T.S. 26,** pág. 8475; Chiesa, Ernesto, Práctica Procesal Puertorriqueña, Evidencia, **Publicaciones J.T.S.**, San Juan, 1979, Análisis Editorial, pág. 21.

La declaración de un testigo no contradicho sobre un hecho determinado debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil, o que por su conducta en la silla testifical se haga indigno de crédito. *Miranda Soto v. Mena Eró,* 109 D.P.R. 473 (1980); *Caballero v. González,* 53 D.P.R. 539 (1938); *Navarro v. Cía. Azucarera,* 53 D.P.R. 126 (1938). No rige en Puerto Rico al presente, la regla anterior que disponía que si un testigo hubiese faltado a la verdad en una parte de su declaración, las otras debían ponerse en duda, o sea, la máxima *falsus in uno, falsus in ómnibus.* Esta máxima no autoriza rechazar toda la declaración de un testigo porque se haya contradicho o faltara a la verdad respecto de uno o más particulares.

El principio rector es que la misión de los tribunales requiere armonizar y analizar en conjunto e integralmente toda la prueba, a los fines de arribar a una conclusión correcta y razonable del peso que ha de concedérsele en su totalidad. *Pueblo v. León Martínez,* **93 J.T.S. 22** (1993); *Pagán v. Santiago,* **92 J.T.S. 56** (1992); *Pueblo v. Pintos Lugo,* **92 J.T.S. 151** (1992); *Quintana Tirado v. Longoria,* 112 D.P.R. 276, 292 N.9 (1982). Inconsistencias sobre hechos no esenciales no obligan a descartar todo el testimonio. De hecho, el testimonio perfecto de ordinario, en lugar de ser indicativo de veracidad, es altamente sospechoso ya que, por lo general, es producto de fabricación. *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 652 (1986); *Pueblo v. Chévere Heredia,* **95 J.T.S. 115** (1995). Toda vez que el testimonio de la testigo principal de cargo le mereció crédito al tribunal apelado esa prueba es suficiente en derecho para sostener el fallo condenatorio.

No es nuestra función, a nivel apelativo, pasar juicio sobre la credibilidad de los testimonios ofrecidos en el foro de instancia. No somos dados a sustituir el criterio del juzgador --ante quien declararon los testigos y quien tuvo la oportunidad de apreciar su comportamiento, evaluar la veracidad de sus testimonios y dirimir cualquier conflicto que surgiese-- por nuestro propio criterio. La apreciación de la prueba por el foro de instancia debe prevalecer, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.

En *Quevedo v. Sucesión Pino,* 15 DPR 686, (1909), el Tribunal Supremo señaló que: *"Es un principio bien establecido que la credibilidad de los testigos, así como el peso que ha de darse a la prueba de carácter oral, en los casos en que estuviera en conflicto y fuera contradictoria, son todas*

*cuestiones de hecho que han de resolverse por los llamados a juzgar tales cuestiones, sea por el tribunal o el jurado, y no cuestiones de derecho que habrán de ser resueltas solamente por el tribunal. Es principio sencillo que el juez sentenciador tiene mejores oportunidades que un tribunal de apelación para apreciar la credibilidad de las declaraciones testificales."*

En el mismo caso y haciendo referencia a un pronunciamiento de un jurisconsulto del estado de Missouri, se expresó así: *"La verdad no surge siempre valiente y desnuda, sino más bien modestamente, de un extracto impreso presentado a un tribunal de última instancia. Con frecuencia se esconde en apartados rincones y lugares, visibles solamente a los ojos de un juez que conoce originalmente el caso. A él no se le escapa la mirada furtiva, el rubor de una conciencia avergonzada, la duda, el tono sincero, el petulante o el despreciativo, la vehemencia, la calma, el bostezo, el suspiro, la ingenuidad o la astucia o sagacidad, el poco respeto a la solemnidad de un juramento, o la completa inteligencia de lo que ello significa, el continente y semblante que ocupa la silla destinada a los testigos. El rostro desvergonzado del falsario, la locuacidad del testigo aleccionado al recitar lo que se le enseñara, o la excesiva vehemencia de un testigo verídico, son circunstancias todas que sólo por él pueden ser fielmente apreciadas".*

En *Ortiz v. Cruz Pabón,* 103 D.P.R. 939, 947, haciendo referencia a lo expresado por el eminente procesalista Carnelutti en su obra *Revista di Diritto Processale Civile,* año 1929, se dice: *"La verdad es que el testigo debe ser oído, y visto; interrogado y mirado".* Don Alfonso de Paula Pérez, en *"La prueba de los testigos en el proceso civil español"* (ed. Reus, Madrid, 1968, pág. 7) añade: *"y es que no sólo habla la voz viva. También hablan las expresiones mímicas, el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al juez de otras tantas circunstancias que han de valer más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación".*

El análisis integral de la prueba testifical que tuvo ante su consideración el Tribunal de Primera Instancia, no produce en nuestro ánimo una insatisfacción e intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia. *Pueblo v. Cabán Torres, supra,* a la pág. 648. Correspondía al apelante señalar y demostrar la base para ello. Sus señalamientos no han rebasado la naturaleza de meras aseveraciones. Como tan certeramente señalara nuestro más alto foro en el caso de *Pueblo v. Cabán Torres, supra,* a la pág. 648, *"Lo contrario, esto es, la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia, significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción".*

Por los fundamentos expresados, se confirma la sentencia apelada.

Así lo pronunció y lo manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

## ESCOLIOS 96 DTA 104

**1.** Nevárez Muñiz Dora, Código Penal de Puerto Rico, Revisado y Comentado, ed. 1986, págs. 192 y 193.

**2.** Es menester advertir que el Artículo 106 del Código Penal en su redacción actual prohibe que se expongan no sólo las partes pudendas sino cualquier otra parte íntima. La prueba creída por el Tribunal de Primera Instancia es que el apelante se exhibió totalmente desnudo.

**3.** Es interesante notar que aunque la perjudicada no se sintiera ofendida y molesta, de todas formas el delito fue consumado pues bastaba que la conducta del apelante pudiera molestar u ofender a la perjudicada.